2011 VT 123

## State of Vermont v. Joseph Kenvin

[38 A.3d 26]

No. 10-138

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 4, 2011

*Stuart G. Schurr*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Rachel Westropp*, Montpelier, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant Joseph Kenvin appeals from a district court judgment requiring him to pay restitution and sentencing him to a term of eleven to twelve months to serve.

Following a car accident that resulted in a fatality, a jury convicted defendant of negligent operation of a motor vehicle, in violation of 23 V.S.A. § 1091(a). On appeal, he contends the trial court erred in ordering him to pay restitution where: (1) the State failed to establish the amount of loss by a preponderance of the evidence; (2) the State failed to show that the loss was the direct result of the crime committed or that the decedent's family members were the direct victims of the crime; and (3) the court failed to make findings regarding his ability to pay. Defendant also contends the trial court erred in sentencing him to eleven to twelve months to serve because a sentence with a gap of thirty days between the minimum and maximum term is a fixed sentence. We reverse and remand for reconsideration of the restitution awards.

¶ 2. Defendant's conviction arose out of an accident that occurred on September 3, 2008. Defendant was traveling northbound in his pickup truck. At an intersection, defendant turned left in front of the decedent, who was traveling on a motorcycle in the opposite direction. The decedent, unable to avoid defendant's pickup truck, collided with defendant and flew off his motorcycle. He died from injuries sustained in the accident.

¶ 3. Defendant was charged with grossly negligent operation, death resulting, in violation of 23 V.S.A. § 1091(b). At trial, the court instructed the jury on the elements of the charge. The court explained that, for the jury to find defendant guilty, one of the seven elements that the State must prove was that defendant's grossly negligent operation of the motor vehicle caused the decedent's death. The court also instructed the jury on the lesser-included charge of negligent operation, *id.* § 1091(a), which required the State to prove that defendant "failed to exercise that amount of care that a reasonably prudent person would have exercised under the circumstances to avoid injury to others and to himself." The court explained that the jury had to consider the lesser-included charge if it concluded that the State failed to prove an element of grossly negligent operation, death resulting, or if the jury members could not agree that the State had proven each essential element. The jury found defendant guilty of the lesser-included charge — operating a vehicle in a negligent manner — thereby acquitting him of grossly negligent operation, death resulting.

¶ 4. The court sentenced defendant to eleven to twelve months. The State requested that the court order defendant to refund the

victims' compensation program, which it said "had already provided restitution for the [decedent's] family," and to pay restitution to the decedent's wife. According to the State, the restitution covered the family's travel costs to attend the decedent's funeral, a radiology bill for the decedent not covered by insurance, and storage costs for the decedent's motorcycle.

¶ 5. Defendant objected to the award of restitution. He argued first that by acquitting him of grossly negligent operation with death resulting, the jury found that he was not legally responsible for the decedent's death. The court rejected this argument. Defendant also argued that the travel expenses were not a direct result of negligent operation. In addition, defendant objected when the State offered the restitution order. Before defense counsel could elaborate on the objection, the court stated that the travel expenses of the decedent's wife, children, grandchildren, and mother were "directly connected" to his death. Without making any findings regarding defendant's ability to pay, the court made two restitution orders on March 10, 2010. It ordered defendant to pay the decedent's wife $8,702.38 and to pay the victims' compensation program $4,970.01. Defendant appealed.

I.

¶ 6. On appeal, defendant challenges the trial court's restitution orders. Specifically, defendant argues that the restitution orders are invalid because the State failed to establish the amount of loss by a preponderance of the evidence; the State failed to show that the restitution was the direct result of the crime committed or that the family members were the direct victims of the crime; and the trial court failed to make any findings regarding defendant's ability to pay. We review the orders for an abuse of discretion. See *State v. VanDusen*, 166 Vt. 240, 245, 691 A.2d 1053, 1056 (1997) (affirming restitution order as within trial court's discretion). The proper interpretation of the controlling statutes is a question of law that we review de novo. *State v. Bohannon*, 2010 VT 22, ¶ 5, 187 Vt. 410, 996 A.2d 196.

¶ 7. We first address the substance of the restitution that defendant was ordered to pay. The court signed two restitution orders based on the totals offered by the State: one for the decedent's wife for $8,702.38, and one for the victims' compensation program for $4,970.01. Although it is not clear from the record exactly what costs were included in each restitution order,

and the court made no findings in this regard, the State reported that the restitution included the costs for the decedent's wife and family to travel to the funeral, storage costs charged to the decedent's wife for his motorcycle, and a radiology bill from the decedent's hospitalization not covered by insurance. According to the State, the medical bill totaled $5,138, and an additional $7,000 of the restitution was "mostly travel." We conclude that, of these losses, only the decedent's medical bill may be compensated through restitution.

¶ 8. The restitution statute, 13 V.S.A. § 7043, sets forth the kinds of losses that may be covered by restitution. It provides that restitution must be considered "in every case in which a victim of a crime, as defined in subdivision 5301(4) of this title, has suffered a material loss." *Id.* § 7043(a)(1). The statute defines "material loss" as "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." *Id.* § 7043(a)(2). Most importantly for our analysis here, § 5301(4) defines "victim" as "a person who sustains physical, emotional or financial injury or death as a direct result of the commission or attempted commission of a crime or act of delinquency and shall also include the family members of a minor, incompetent or a homicide victim."

■ ¶ 9. Restitution may not be awarded to the decedent's wife and other family members for their travel expenses or for storing the motorcycle because the facts and law do not support a finding that these financial injuries were the "direct result" of the crime. *Id.* § 5301(4). We have noted that § 7043 is "much narrower" than restitution statutes in other jurisdictions and as such requires a "direct link" between the crime and the financial injury for which restitution is sought. *State v. Forant*, 168 Vt. 217, 223, 225, 719 A.2d 399, 403, 404 (1998) (holding that expenses incurred by domestic-assault victim to change locks and telephone number were "indirect costs" from the crime and therefore "not recoverable as restitution"); accord *Bohannon*, 2010 VT 22, ¶ 12 (holding that extradition costs incurred by the Department of Corrections were "simply too tenuous to trigger restitution"). As these and other decisions demonstrate, the travel and storage expenses incurred by the decedent's family are not directly linked to the offense for which defendant was convicted. Accordingly, there is no basis for the award.

¶ 10. There is statutory language, to be sure, that appears to broaden the definition of "victim" by providing that it *also* include[s] the family members of a minor, incompetent or a homicide victim." 13 V.S.A. § 5301(4) (emphasis added). Even assuming, however, that this provision would allow restitution for financial loss where it might not otherwise qualify as a "direct result" of the offense, the provision is inapplicable here. Obviously, neither the provision for family members "of a minor" or an "incompetent" applies to the decedent. See *State v. Fletcher*, 2010 VT 27, ¶ 10, 187 Vt. 632, 996 A.2d 213 (mem.) (explaining that we begin with plain meaning of statute to determine and effectuate legislative intent).

¶ 11. Nor does the provision for family members of a "homicide victim" apply according to the jury's verdict. Although initially charged with grossly negligent operation, death resulting, the jury here found defendant guilty only of the lesser-included charge of negligent operation, 23 V.S.A. § 1091(a). We have re-peatedly "cautioned that a restitution order may not be based on conduct that was not covered by the defendant's *conviction.*" *State v. Rollins*, 2007 VT 127, ¶ 7, 182 Vt. 644, 944 A.2d 218 (mem.) (emphasis added) (holding that defendant's conviction of attempted assault and robbery could not support restitution order for money taken from victim); see also *State v. LaFlam*, 2008 VT 108, ¶ 17, 184 Vt. 629, 965 A.2d 519 (mem.) (holding that defendant's conviction of driving with suspended license did not support restitution award to owner of store damaged when defendant drove into it, as there was no "direct link between the loss for which restitution [was] ordered and the conduct for which defend-ant [was] convicted"); *Forant*, 168 Vt. at 222, 719 A.2d at 403 (holding that State must demonstrate "causation between the defendant's criminal act and the victim's loss"); *VanDusen*, 166 Vt. at 244, 691 A.2d at 1055 (explaining that, to support restitution order, State must establish causation between victim's loss and conduct for which defendant was convicted); *State v. Knapp*, 147 Vt. 56, 60, 509 A.2d 1010, 1012 (1986) (disallowing restitution where damages were result of unlawful mischief charge of which defendant was acquitted rather than conduct for which he was convicted, thus failing to demonstrate "vital link-up" between conviction and restitution).

¶ 12. As we explained in *State v. LaBounty*, 23 V.S.A. § 1091 defines the offense of grossly negligent operation "in terms

of driving, not in terms of the consequences that might result from driving negligently. A driver may be convicted of grossly negligent operation regardless of whether an injury occurs, or even whether an accident occurs." 2005 VT 124, ¶ 6, 179 Vt. 199, 892 A.2d 203. Thus, violation of the statute "turns entirely on whether the driver's conduct involved a gross deviation from the care that a reasonable person would have exercised." *Id.* (quotation omitted). The same conclusion follows, a fortiori, with respect to the lesser offense of negligent operation, which is defined strictly in terms of whether the defendant "breached a duty to exercise ordinary care." 23 V.S.A. § 1091(a)(2). Therefore, absent any element of injury or harm, the conviction of negligent operation can not be causally linked to the decedent's death, and thus cannot support a restitution award for any resulting financial loss.

¶ 13. We recognize that the decedent's family members have suffered greatly. The decedent, however, was the sole victim of defendant's crime for consideration of restitution under 13 V.S.A. § 7043. Under the statute, any restitution award must be limited to the material losses that the decedent incurred as a direct result of defendant's crime. See *id.* §§ 5301(4), 7043(a)(1); see also *LaFlam*, 2008 VT 108, ¶ 17 ("In summary, Vermont law requires there to be a direct link between the loss for which restitution is ordered and the conduct for which defendant has been convicted."). Here, the only such loss included in the restitution orders, according to the State's description, was the $5,138 medical bill not covered by insurance. See 13 V.S.A. § 7043(a)(2).

¶ 14. It is not clear from the record whether the medical bill was included in the restitution order compensating the decedent's wife or in the order reimbursing the victims' compensation fund. On remand, the court must determine whether the Victims' Compensation Board has already paid this medical bill or whether it remains outstanding and order the restitution accordingly. See *id.* § 7043(c)(1) (requiring trial court awarding restitution to make findings with respect to total amount of material loss incurred by victim); *id.* § 7043(h)(2) (stating that restitution may be paid to victims' compensation fund when Victims' Compensation Board has made payment on behalf of victim).

¶ 15. We note that the restitution order requiring defendant to reimburse the victims' compensation fund wholesale

— without additional findings on the kinds of costs covered or their recipients — was improper because the court conflated an award from the Victims' Compensation Board pursuant to 13 V.S.A. §§ 5351-5358 and an award of restitution pursuant to § 7043. Given the lack of findings, it is not evident that the compensation awarded by the Victims' Compensation Board were for "material loss[es]" suffered by the "victim" per the restitution statute. *Id.* § 7043(a)(1). While 13 V.S.A. § 7043(h)(2) allows restitution to be directed to the victims' compensation fund when the Victims' Compensation Board has made payment to or on behalf of a victim, not all payments from the Board are compensable through restitution. The discretion of the trial court to order restitution as part of the sentencing process is more limited. *Forant*, 168 Vt. at 225, 719 A.2d at 404; see 13 V.S.A. § 5355 (governing the approval or rejection of applications for compensation from the Victims' Compensation Board). Damages compensable by the Board are not necessarily compensable through restitution. *Forant*, 168 Vt. at 225, 719 A.2d at 404. Furthermore, the Board awards compensation "to victims of crimes and to their dependents," 13 V.S.A. § 5352(a), but, as discussed above, restitution is not available here for the decedent's dependents — or other family members — because they are not "victims" for the purposes of § 7043.

¶ 16. Defendant also argues that both restitution orders are invalid because the court failed to make any findings regarding his ability to pay. In its brief, the State "acknowledges that there is little evidence in the record concerning [defendant's] financial situation" but responds that defendant did not object on these grounds below and therefore failed to properly preserve this issue for appeal. No preservation is required here. The statute mandates that the trial court determine whether a defendant will be able to pay the amount of restitution. 13 V.S.A. § 7043(c)(2). We have consistently held that it is incumbent upon courts to make these findings, reversing restitution orders where they are lacking. *State v. Sausville*, 151 Vt. 120, 121-22, 557 A.2d 502, 503 (1989) (reversing restitution order where court failed to make findings as to defendant's ability to pay restitution award); *State v. Curtis*, 140 Vt. 621, 623, 443 A.2d 454, 456 (1982) (reversing restitution order where record did not contain finding on defendant's ability to pay); *State v. Benoit*, 131 Vt. 631, 635, 313 A.2d 387, 389 (1973) (reversing and remanding restitution order where record lacked findings that defendant could pay amount ordered).

¶ 17. Here, the court had evidence relating to defendant's ability — or inability — to pay. See *Sausville*, 151 Vt. at 121, 557 A.2d at 503 (explaining that findings on ability to pay can be made only after presentation of evidence). Defendant's public defender application on file called attention to his potential financial difficulties and, more importantly, stated his income. Furthermore, the court placed defendant on a twenty-four-hour curfew, forbidding him from leaving home. Even if more information were required for the court to make findings regarding defendant's ability to pay, it is the State's burden to establish defendant's ability to pay if defendant does not offer evidence on his own behalf. See *id.* at 121, 557 A.2d at 503 ("If defendant does not take the stand on his own behalf, it will be necessary for the State to establish in some other manner defendant's ability to pay restitution."). On remand, the court must make findings on defendant's ability to pay any restitution it orders.[1]

## II.

¶ 18. Next, defendant challenges the trial court's sentence of eleven to twelve months to serve. Defendant argues that a sentence with a gap of only thirty days between the minimum and maximum term is a fixed sentence in violation of 13 V.S.A. § 7031(a). Although we generally defer to sentencing courts absent exceptional circumstances, we review de novo whether a sentence conforms to our indeterminate sentencing law. *State v. Delaoz*, 2010 VT 65, ¶ 39, 189 Vt. 385, 22 A.3d 388.

¶ 19. Under 13 V.S.A. § 7031(a), the trial court must establish a maximum sentence in accordance with the maximum term fixed by law for the offense and may establish a minimum sentence not less than the shortest term fixed by law for the offense. In addition, the statute provides that "the court imposing the sentence shall not fix the term of imprisonment." We recently held in *Delaoz*, and affirmed following reargument, that the Legislature's adoption of this proscription on determinate sentences indicates its intent to transfer some sentencing discretion from the courts to the state's parole authority. 2010 VT 65, ¶¶ 40, 67.

---

[1] Because these issues are dispositive, we do not address defendant's additional arguments.

¶ 20. At oral argument, the State asserted that defendant's crime, a misdemeanor with a statutory maximum sentence of one year, see 23 V.S.A. § 1091(a)(3), was not a parole offense pursuant to 28 V.S.A. § 501(1), which states: "If the inmate's sentence has no minimum term or a zero minimum term, the inmate shall be eligible for parole consideration within 12 months after commitment to a correctional facility." The State argues that defendant's offense is not subject to 13 V.S.A. § 7031(a) because, had defendant received no minimum term or a zero minimum term, he could have been eligible for parole under 28 V.S.A. § 501(1) just one day before reaching his maximum sentence. Thus, the State suggests that § 501(1) demonstrates the Legislature's intent to render defendant's offense ineligible for parole.

¶ 21. The State misreads § 501(1). Under § 501(1), an inmate with a sentence having no minimum term or a zero minimum term and a maximum of one year shall be eligible for parole *within* those twelve months. That eligibility could come at any time during the twelve month period. This section does not indicate any legislative intent to remove defendant's crime from the indeterminate sentencing statute or prevent inmates convicted of offenses with statutory maximums of one year from being eligible for parole.

¶ 22. The issue is thus whether an eleven-month minimum and twelve-month maximum sentence is, in effect, a fixed twelve-month sentence within the meaning of the indeterminate sentencing statute. In *Delaoz*, we concluded that a sentence where the maximum and minimum terms were so close together as to give inadequate time for parole consideration effectively closed the window during which the parole board could exercise its discretion and thwarted the purpose behind both the indeterminate sentence law and our laws governing parole. 2010 VT 65, ¶¶ 44, 67.

¶ 23. Subsequent to our decision in *Delaoz*, the Legislature passed an act comprehensively revising the sentencing scheme. Among its provisions was an amendment adding a final sentence to § 7031(a) as follows: "A sentence shall not be considered fixed as long as the maximum and minimum terms are *not identical*." 2011, No. 41, § 2 (emphasis added). Thus, the Legislature through this enactment superseded our holding in *Delaoz* and effectively resolved defendant's claim here, if the amendment to § 7031(a) applies to defendant's sentence.

¶ 24. The general presumption is that legislation is intended to apply only prospectively. *Northwood AMC Corp. v. Am. Motors Corp.*, 139 Vt. 145, 148, 423 A.2d 846, 849 (1980). The presumption may be rebutted, however, where the legislative history and surrounding circumstances indicate that the revision was intended to clarify the meaning of the preexisting law rather than to effect a substantive change. As we explained in *State v. Thompson*: "Clarification is a legitimate and recognized objective of legislative action. We presume that the Legislature intended to change the meaning of a statute when it amends it, but we will recognize clarification of the law where the circumstances clearly indicate it was intended." 174 Vt. 172, 178, 807 A.2d 454, 460 (2002) (citation omitted); accord *Elkins v. Microsoft Corp.*, 174 Vt. 328, 337, 817 A.2d 9, 17 (2002) ("Where the Legislature has amended a prior law and the circumstances clearly indicate clarification to be intended, this Court's construction of a statute must be governed by the disclosed intent of the Legislature.").[2]

¶ 25. A summary of the legislation amending § 7031(a) explained that it *"[c]larifies* that a sentence is not considered 'fixed' and thereby prohibited by Vermont's indeterminate sentencing structure, provided the minimum and maximum terms of the sentence are not identical." Act Summary, 2011, No. 41, available at http://www.leg.state.vt.us/docs/2012/Acts/ACT041sum.htm (em-

---

[2] When a clarification of a misapplied or misinterpreted statute is enacted by the legislature, it is generally understood that the "act has no retrospective effect because the true meaning of the statute remains the same." *Western Sec. Bank v. Super. Ct.*, 933 P.2d 507, 514 (Cal. 1997); see also *Levy v. Sterling Holding Co.*, 544 F.3d 493, 506 (3d Cir. 2008) ("[A] new rule should not be deemed to be 'retroactive' in its operation . . . if it d[oes] not alter existing rights or obligations [but] merely clarifie[s] what those existing rights and obligations ha[ve] always been." (quotation omitted)); *Fox v. State*, 158 P.3d 69, 76 (Wash. Ct. App. 2007) ("[A] statute that clarifies, rather than alters, a current law does not operate retroactively even when applied to transactions conducted before its enactment."). Thus, because a law must be retroactive to violate the ex post facto clause, we need not be concerned here about any possible objection on this ground. See *United States v. Brennan*, 326 F.3d 176, 197 (3d Cir. 2003) ("[W]hen an amendment is a mere clarification, rather than a substantive change . . . , its application does not violate the *ex post facto* clause."); *United States v. Mapp*, 990 F.2d 58, 61 (2d Cir. 1993) ("When an amendment serves merely to clarify . . . the Ex Post Facto clause is not implicated."); *Holm v. Iowa Dist. Ct.*, 767 N.W.2d 409, 416 (Iowa 2009) ("There is no ex post facto violation where a court merely clarifies the law without making substantive changes.").

phasis added).[3] That a clarification rather than a change in the law was intended is further corroborated by the fact that the amendment was enacted in response to a statutory interpretation by this Court in *Delaoz* that the Legislature obviously deemed to be contrary to its intent. The surrounding circumstances thus indicate that the added sentence was intended to clarify or correct the law's meaning rather than change it. See *In re Shantee Point, Inc.*, 174 Vt. 248, 258, 811 A.2d 1243, 1251 (2002) (holding that ordinance amendments were "clarifications adopted in light of . . . litigation, rather than substantive changes"); see also *In re Oswalt*, 444 F.3d 524, 528 (6th Cir. 2006) ("When [an] amendment [is] passed in the midst of controversy over a provision's meaning, the usual presumption that an amendatory act declares new law is overcome and a legislative intent to clarify rather than to change the law may be inferred." (quotation omitted)); *Oxford Tire Supply, Inc. v. Comm'r of Revenue Servs.*, 755 A.2d 850, 856 (Conn. 2000) (observing that another significant factor "in determining the clarifying character of legislation is that the legislation was enacted in direct response to a judicial decision that the legislature deemed incorrect" (quotation omitted)). That the provision was made effective immediately "on passage" rather than in the future also tends to support an inference of an intent to clarify the existing law. 2011, No. 41, § 13; see *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 198, 733 A.2d 733, 740 (1999) (noting that, where Legislature "enacts a clarifying provision," it generally "provides for the statute to be effective upon passage" rather than at a future date); *Pac v. Upjohn Co.*, 571 A.2d 160, 168 n.10 (Conn. App. Ct. 1990) (holding that amendment was clarification of

---

[3] Summaries of all bills passed by the General Assembly are prepared by staff of the Legislative Council. While not a direct statement of the Legislature's intent, such bill summaries are routinely consulted and cited by courts as evidence of legislative intent. See, e.g., *People v. Chaussee*, 880 P.2d 749, 758 (Colo. 1994) (quoting from "Staff Summary" "prepared by legislative council" as evidence of act's legislative history and underlying purpose); *Lane v. Metro. Prop. & Cas. Ins. Co.*, 7 A.3d 950, 956 n.6 (Conn. App. Ct. 2010) (citing the "office of legislative research bill summary" as evidence of legislative intent); *Stelmack v. State*, 58 So. 3d 874, 876-77 (Fla. Dist. Ct. App. 2010) (citing "staff summary prepared for the joint legislative committee" as evidence of legislative history); *State v. Johnson*, 2 A.3d 368, 376 (Md. 2010) (quoting from bill summary "prepared by staff of the General Assembly" as evidence of legislative intent); *Lamb v. Coursey*, 243 P.3d 130, 134-35 (Or. Ct. App. 2010) (citing "the staff measure summary" as part of legislative history to demonstrate underlying legislative purpose).

existing law where it provided that it clarified the law and was "effective on passage").

¶ 26. Accordingly, we conclude that the amendment to § 7031(a) applies to defendant's sentence, and thus defeats defendant's claim that he was sentenced to an impermissible fixed term.

*Defendant's sentence is affirmed. The restitution orders are reversed and remanded for further proceedings consistent with the views expressed herein.*