2013 VT 103

## State of Vermont v. Christopher Scott

[88 A.3d 1173]

No. 12-186

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed October 18, 2013
Motion for Reargument Denied December 13, 2013

*James A. Hughes*, Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Thomas Tarnow*, Legal Intern, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals his jury conviction for negligent operation of a motor vehicle and the resulting sentence. He asserts that the trial court impermissibly allowed the State's crash reconstruction expert to testify about defendant's speed at the time of the collision. Defendant also contends that, at sentencing, the trial court erred in considering the death that resulted from the accident as a factor in sentencing. We affirm defendant's conviction and sentence.

¶ 2. The record reveals the following facts. While driving several colleagues from work in his pick-up truck on Lake Road in St. Albans, defendant recognized a coworker traveling up ahead. As a joke, defendant passed the coworker's vehicle on the left, crossing a double-yellow line. Defendant's passing speed is not clear from the record, but by all accounts it exceeded the posted 40 miles per

hour limit. Defendant completed the pass and returned to the right lane. Some evidence suggests he began to decelerate as his truck neared the approaching intersection with Kellogg Road.

¶ 3. Meanwhile, the decedent driver, who was travelling south on Kellogg Road with his mother as a passenger, had reached the intersection of Lake and Kellogg Roads. The decedent turned left onto Lake Road either as defendant was passing the coworker's vehicle or immediately afterwards. About three seconds after defendant returned to the right lane, defendant's truck collided with the decedent's car. The decedent's car spun 180 degrees, stopping on Lake Road near the intersection. Defendant's truck slid, bounced, or rolled off the road through a barbed wire fence and came to rest in a farmer's field. The decedent died from injuries sustained during the crash; defendant suffered a broken leg.

¶ 4. A captain of the Franklin County Sheriff's Department, certified as an accident reconstructionist by the Institute of Police Technology and Management, visited the scene, reviewed evidence gathered by the responding law enforcement officials and performed on-site testing. As part of his process, he pulled a drag sled — a weighted sled with attached scales — over the road and grass surfaces where the vehicles had traveled. He used a mathematical formula to determine the "drag factor," or the amount of friction existing between a moving vehicle and the ground, generated by these surfaces. He incorporated the drag factors, estimated vehicle weights, post-crash travel distances, and braking estimates into other formulas to calculate the momentum required to move the vehicles from the point of impact over those surfaces to their final resting positions. Working backward from these calculations, and accounting for the energy absorbed by the crash, the officer concluded that defendant had been traveling 61 miles per hour when his truck struck the decedent's car.

¶ 5. Defendant was charged with grossly negligent operation of a motor vehicle, death resulting, pursuant to 23 V.S.A. § 1091(b). Before trial, defendant moved to exclude the speed calculation evidence as inadmissible under Vermont Rule of Evidence 702, arguing that the crash reconstruction expert's analysis was scientifically unreliable. The court held a motion hearing at which the State and defendant each presented expert testimony from accident reconstructionists. The court ruled that defendant's concerns about the testimony of the State's expert went to the weight of

the evidence, not its admissibility, and denied defendant's motion. The State's expert testified at trial, as did the passengers in defendant's truck who offered a range of precrash speeds from 45 to 55 miles per hour. Defendant called his own expert to testify that the speed calculations of the State's expert were unreliable. The jury acquitted defendant of grossly negligent operation but convicted him of the lesser-included offense of negligent operation under 23 V.S.A. § 1091(a).

¶ 6. Before sentencing, defendant asked the court to determine that, as a matter of law, the decedent's family members could not be "victims" entitled to speak at the sentencing hearing. Defendant argued that because his conviction for negligent operation did not contain any requirement of injury or harm, the decedent could not have been injured as a "direct result" of his negligence and so neither the decedent nor his family members could be "victims" for sentencing purposes. The trial court indicated that it would decide at the sentencing hearing whether to make a finding as to causation, and consequently, whether the decedent's family members would be entitled to testify.

¶ 7. At the sentencing hearing, the court found that defendant was travelling between 50 and 55 miles per hour on impact, rejecting both the State's expert testimony offering a speed of 61 miles per hour and defendant's assertion of 45 to 50 miles per hour. Noting that the parties had stipulated that the accident caused the decedent's death, the court also found that "defendant's negligence was in fact a direct and substantial cause of the accident and, therefore, a proximate cause,"[1] and permitted the decedent's mother to speak as a "victim" of defendant's crime. Defendant spoke on his own behalf. The court sentenced defendant to a prison term of 30 days to one year, with 30 days to serve and a three-year term of probation. This appeal followed.

I.

¶ 8. Defendant first contends that the trial court erred in denying his motion in limine and permitting the State's crash reconstruction expert to testify about defendant's speed at the

---

[1] The sentencing court found that although decedent entered the intersection before it was safe to do so, decedent's action was foreseeable and thus "did not qualify as an intervening efficient cause that could constitute a defense to the criminal charge."

time of the collision. Specifically, defendant claims that by using a drag sled on grass to calculate drag factor and assuming that defendant's tires were locked and fully inflated, the State's expert applied insufficient facts to an unreliable scientific method. We find no error.

¶ 9. ▮ Vermont Rule of Evidence 702 provides that a qualified expert may present testimony that helps the factfinder understand the evidence or determine a disputed fact if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." As Vermont's evidentiary rules are "essentially identical" to the federal rules, we have adopted federal principles for admission of expert testimony. *State v. Brooks*, 162 Vt. 26, 30, 643 A.2d 226, 229 (1993). These standards provide that admissible expert testimony need only be both relevant and reliable, directing trial courts to act as gatekeepers and screen expert testimony before the jury hears it. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *985 Assocs., Ltd. v. Daewoo Elecs. Am., Inc.*, 2008 VT 14, ¶ 6, 183 Vt. 208, 945 A.2d 381.

¶ 10. ▮ Because defendant does not dispute the relevancy of the State's expert testimony, we address only its reliability. Reliable expert testimony is "sufficiently rooted in scientific knowledge," that is, grounded in scientific methods and procedures rather than mere "subjective belief or unsupported speculation." *State v. Streich*, 163 Vt. 331, 343, 658 A.2d 38, 47 (1995). In assessing whether an expert's assertion is reliable, a court may be guided by the following factors: (1) whether the applicable theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential error rate; and (4) whether it has been generally accepted by the scientific community. *Id.* (citing *Daubert*, 509 U.S. at 593-94). These factors are not exhaustive, and a trial court has "broad discretion to determine, on a case-by-case basis, whether some or any of the factors are relevant in evaluating the reliability of expert evidence" before it. *Daewoo*, 2008 VT 14, ¶ 8; see also *Daubert*, 509 U.S. at 589 (rejecting the "general acceptance" test, once the "exclusive test for admitting expert scientific testimony," as incompatible with the more liberal parameters of Rule 702).

¶ 11. ■ We review the trial court's decision to admit expert testimony for abuse of discretion. *Daewoo*, 2008 VT 14, ¶ 9. Our deferential posture, however, does not preclude this Court from "engag[ing] in a substantial and thorough analysis of the trial court's decision and order to ensure that the judge's decision was in accordance with *Daubert* and our applicable precedents." *State v. Burgess*, 2010 VT 64, ¶ 11, 188 Vt. 235, 5 A.3d 911 (quotation omitted).

¶ 12. ■ ■ This Court has emphasized in prior cases that "*Daubert* presents an admissibility standard only." *Id.* ¶ 12 (quotation omitted). In fact, we adopted *Daubert* specifically to promote more liberal admission of expert evidence. *Id.* (citing *State v. Tester*, 2009 VT 3, ¶ 18, 185 Vt. 241, 968 A.2d 895); see also *Daewoo*, 2008 VT 14, ¶ 9 (noting this Court's intent to "broaden[] the types of expert opinion evidence that could be considered by the jury at trial"). The central purpose of judicial gatekeeping under Rule 702 is to screen out potentially confusing or misleading "junk science" that was "propagated primarily for litigation." *Daewoo*, 2008 VT 14, ¶ 8. As noted by the U.S. Supreme Court, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. When faced with questionable scientific evidence, such as that which is "well-grounded but innovative," *id.* at 593, a court should focus its Rule 702 inquiry "solely on principles and methodology" and rely on the party opponents to expose the weaknesses of expert conclusions. *Id.* at 595; see also *Burgess*, 2010 VT 64, ¶ 12.

¶ 13. ■ Within the confines of Rule 702, we apply these principles to the facts ·at issue and conclude that because the State's crash reconstruction expert offered a sufficiently reliable foundation for his testimony, the trial court properly allowed the jury to hear it. The State's expert, an experienced police officer certified as a crash reconstructionist, testified that the mathematical formulas he used to calculate defendant's speed are standardized, tested, published, and nationally accepted within his field, with a potential margin of error that he mitigated by using conservative estimates when making assumptions about certain variables. The State's expert also testified that he applied these calculations to the facts of the collision in accordance with his

crash reconstruction training. He agreed that using a drag sled on grass instead of pavement was not ideal, but explained that it was the best technique available to him to estimate the drag factor — an essential factor in his speed calculations — of that surface.

¶ 14. ■ We acknowledge that other experts in the field, who generally allow that a drag sled can precisely determine drag factor over dry, paved surfaces, find its relative accuracy on other types of surfaces to be lacking.[2] This alone, however, does not transform the latter uses into misleading "junk science" to be categorically excluded under Rule 702. See *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) ("Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support [for the specific use] may go to the weight, not the admissibility, of the expert's testimony." (quotation omitted)). Instead, this use qualifies as a well-reasoned but novel application of a traditionally accepted technique. See *Burgess*, 2010 VT 64, ¶ 17 ("[A] battle of the experts . . . should be played out for the finder of fact, not excluded as a matter of law pretrial."). Defendant had ample opportunity to explore the weight to be given to the speed estimate offered by the State's expert through cross-examination, the testimony of his truck's passengers, and the presentation of his own expert's contrary opinion.

¶ 15. ■ We also disagree with defendant's assertion that the State's expert lacked sufficient data to reliably implement his accident reconstruction techniques. It is true that "data inputs are appropriately within the purview of *Daubert* and V.R.E. 702," *USGen New England, Inc. v. Town of Rockingham*, 2004 VT 90, ¶ 29, 177 Vt. 193, 862 A.2d 269, and that the State's expert estimated or assumed the values of certain variables necessary to his calculations. The expert, however, accounted for each assumption by testifying on direct and cross-examinations at the motion hearing and at trial about each inference he made from the available facts. In particular, the State's expert explained that, in

---

[2] See, e.g., Am. Prosecutors Research Inst., *Crash Reconstruction Basics for Prosecutors: Targeting Hardcore Impaired Drivers* 12 (2003), available at http://www.ndaa.org/pdf/crash_reconstruction_basics.pdf (asserting that a drag sled should not be used on wet roads or grass because the weight of a full-sized vehicle on these surfaces, which presses water out from under tires or furrows tires into the ground, produces a different friction).

his drag factor calculations, he treated each vehicle as if its front wheels were locked because of his knowledge about the individualized front-end damage sustained by each vehicle in the collision. On cross-examination, he acknowledged that he did not lift the vehicles post-crash to test their wheels and that he used values based on inflated tires in his calculations even though the minimal skid marks at the scene might have resulted from deflated tires.

¶ 16. Defendant's expert testified, in contrast, that scientific tests have shown "a substantial difference in drag factors on the grass surface" as compared to pavement. He declared the State's expert's estimation of the drag factor of the grass was scientifically invalid because there was no evidence to support the assumption that the truck's wheels were locked "through the entire process of this collision."

¶ 17. In this way, the estimates and assumptions of the State's expert were both rationalized and challenged, exhibiting the give-and-take of the adversarial process rather than proof of unsupported speculation to be screened from the jury. As the trial court concluded, any concerns about the estimates or the inferences made by the State's expert go to the weight to be granted the proffered evidence, not to its admissibility. See, e.g., *Burgess*, 2010 VT 64, ¶¶ 13, 15 (finding the court's concern that the expert, who failed to consider multiple factors critical to an analysis of defendant's breathalyzer test, lacked sufficient information, to make an accurate analysis was valid but went to the evidence's weight, not its admissibility). The court was therefore within its discretion to permit the State's expert to testify before the jury and to allow the defense to discredit the expert's speed calculations through cross-examination and the offering of the testimony of its own expert and lay witnesses.

## II.

¶ 18. Defendant next contends that the sentencing court impermissibly determined facts and considered victim impact testimony not properly before it. Vermont law entitles a victim of a listed crime to speak at any sentencing proceedings concerning the defendant's conviction. 13 V.S.A. § 5321(a)(2). A "victim" is defined in relevant part as "a person who sustains physical, emotional, or financial injury or death as a direct result of the commission or attempted commission of a crime." *Id.* § 5301(4). Where a "victim"

is unable to exercise the rights granted by statute, a family member may address the court on his or her behalf. *Id.* § 5318. At sentencing, a victim may express views concerning the crime against him or her and the person convicted and the court "shall consider any views offered at the hearing by the victim." *Id.* § 5321(c). Here, the trial court permitted the decedent's mother, herself a survivor of the accident, to testify and have her views considered at defendant's sentencing hearing.

¶ 19. At the sentencing hearing, the State argued that "defendant's criminal action in operating in a negligent manner and the speed and the momentum he carried through from initiating that negligence, making the pass on the double-yellow line . . . still speeding through the warning area before the intersection . . . was the major cause of the collision." The court agreed and found by a preponderance of the evidence that defendant's negligence was a proximate cause of the decedent's death and that the decedent was a "victim" injured as a direct result of defendant's crime. The court considered these findings, the testimony of the decedent's mother and defendant, statistics on sentencing for similar convictions, and other factors including defendant's age, employment, sincere remorse, and lack of criminal record, and sentenced defendant to 30 days to serve and a three-year term of probation with special conditions.[3]

¶ 20. ■ Vermont Rules of Criminal Procedure permit a prosecutor to present to the court "any information relevant to sentencing." V.R.Cr.P. 32(a)(1). "Sentences are imposed with regard to the situation and nature of the offender as well as according to the crime charged." *State v. Delaoz*, 2010 VT 65, ¶ 33, 189 Vt. 385, 22 A.2d 388 (quotation omitted), *superseded by statute on other grounds*. A sentencing court "necessarily has broad discretion over what information may be considered in fashioning a just and fair sentence" and may consider "a wide range of factors," including "the propensity and nature of the offender, the particular acts by which the crime was committed, . . . the circumstances of the offense," and, now, the testimony of the victim, in order to arrive at a sentence that is both appropriate to the crime and consistent with the purposes of sentencing. *Id.* ¶ 34

---

[3] Defendant was required to complete the reparatory process, have no contact with decedent's family, take a remedial driving course, and seek permission from his probation officer to drive anywhere but to and from work during his probation.

(quotation omitted); see also V.R.Cr.P. 32(c)(2) (authorizing inclusion in presentencing investigation reports of "information on [the convicted individual's] characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing [a] sentence").

¶ 21. ▮▮ We conclude that the sentencing court was well within its discretion when it found that defendant's negligence was a proximate cause of the accident and considered the facts of the fatality resulting from the crash, including its impact on the decedent's mother, at sentencing. The jury's decision to acquit defendant of grossly negligent operation and convict him of negligent operation did not, as a matter of law, resolve the issue of causation, and therefore could not preclude the court from doing so. At the sentencing hearing, the court explicitly stated that, while it did not view defendant as entirely responsible for the accident, a reasonable person could have foreseen that another driver might enter the low-visibility intersection when it was dangerous to do so, so that defendant's criminally negligent choice to speed through the intersection was a direct and substantial cause of the accident, notwithstanding the decedent's own role in the collision. These findings are properly based on the facts and circumstances surrounding the accident. See 13 V.S.A. § 7030(a) (in determining sentence, court "shall consider the nature and circumstances of the crime, the history and character of the defendant, the need for treatment, and the risk to self, others, and the community at large presented by the defendant").

¶ 22. ▮▮ ▮▮ The fact that causation is not an essential element of negligent operation does not mean evidence showing that defendant's negligence substantially caused a death is irrelevant or improperly considered under a preponderance of evidence standard at sentencing. See *State v. Thompson*, 150 Vt. 640, 646, 556 A.2d 95, 99 (1989) (finding that sentencing court properly considered use of force relevant to defendant's propensities and circumstances under which he committed the crime, even though evidence of force had not been required for his conviction, and rejecting claim that due process required sentencing court to consider only facts proved beyond a reasonable doubt). The court did not exceed its broad discretion in considering the reasons for the accident and the relative contributions of defendant and the decedent to the tragedy that ensued while trying to understand

defendant's character and the circumstances of the offense. These factors, all "relevant to the determination of an appropriate sentence," *State v. Bushway*, 146 Vt. 405, 407, 505 A.2d 660, 661 (1985), were balanced by the court on the record and resulted in a sentence to serve well within sentencing guidelines. See 23 V.S.A. § 1091(a)(3) (setting the maximum sentence at one year for the first offense of negligent operation of a motor vehicle). There is no abuse of discretion here.[4]

¶ 23. Defendant directs this Court to *State v. Kenvin* to support his contention that the trial court erred in allowing "victim" participation at sentencing. See 2011 VT 123, 191 Vt. 30, 38 A.3d 26. In *Kenvin*, a defendant was acquitted of grossly negligent operation of a motor vehicle, death resulting, and convicted of the lesser-included offense of negligent operation. *Id.* ¶ 3. The trial court required the defendant to compensate the decedent's family under Vermont's restitution statute, finding a direct connection between the death resulting from the accident and the family's purported expenses. *Id.*; see also 13 V.S.A. § 7043. We reversed, noting that restitution is available only to the "victim" of a crime, and that "absent any element of injury or harm, the conviction of negligent operation cannot be causally linked to the decedent's death, and thus cannot support a restitution award for any resulting financial loss." *Kenvin*, 2011 VT 123, ¶ 12. Defendant claims that the principle of *Kenvin* applies equally at sentencing.

¶ 24. Defendant's reliance on *Kenvin* is misplaced. *Kenvin* involved a challenge to victim restitution, a limited statutory entitlement as compared to the broader issue of determining a proper sentence. See *id.* ¶ 9 (holding that Vermont's restitution statute, which is "much narrower" than those of other jurisdictions, does not permit a decedent's family members to recover travel and storage expenses as "victims" of the criminal negligence that killed decedent (quotation omitted)); *State v. Forant*, 168 Vt. 217, 222, 719 A.2d 399, 402 (1998) (holding that the restitution statute is "narrowly drawn"); see also 13 V.S.A. § 7043. Restitution

---

[4] In a supplemental filing made after oral argument, defendant cites *Commonwealth v. McCravy*, 723 N.E.2d 517 (Mass. 2000), to support his argument that his sentence could not be based upon a crime that he was acquitted of or with which he was not charged. As indicated above, defendant was not sentenced for a crime that he did not commit, nor was he sentenced for a crime with which he was not charged. We thus find defendant's reliance on this case to be misplaced.

may be ordered only as compensation for a crime victim's "material loss." 13 V.S.A. § 7043(a)(1)-(a)(2).[5]

¶ 25. ██ ██ Notwithstanding the identical statutory language defining "victim" for both sentencing and restitution purposes, the statute allowing a crime "victim" to testify at sentencing, 13 V.S.A. § 5321(a), requires a more liberal construction. Section 5321, unlike the restitution statute, resides within the statutory chapter devoted to victim rights and benefits, and its "fundamental objective" is to protect crime victims and ensure that they are treated with dignity and respect. *Id.* § 5303. "As such, the statute should be liberally construed to accomplish its purposes." *State v. Gibney*, 2003 VT 26, ¶ 51, 175 Vt. 180, 825 A.2d 32 (contrasting victim protection laws with penal statutes requiring protection of criminal defendants). The court did not err in finding that the decedent was a victim for purposes of 13 V.S.A. § 5301(4), and because the decedent could not testify himself, it was appropriate for his mother to testify on his behalf. *Id.* § 5318. The sentencing court was within its discretion to consider the causes of the accident that killed the decedent and resulting impact on the decedent's family members.

*Affirmed.*

---

[5] "Material loss" is limited to "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." 13 V.S.A. § 7043(a)(2). An offender may be ordered to pay restitution "for an offense for which the offender was not convicted" if pursuant to a valid plea agreement. *Id.* § 7043(e)(3).