2013 VT 114



State v. LeClair (2013-049 &
2013-050)

 

2013 VT 114

 

[Filed 27-Nov-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 114
 
  


 Nos. 2013-049 & 2013-050
 
  


 State of Vermont
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
  
 
 
 Criminal Division
 
 
  
 
 
  
 
 
 Brian K. LeClair
 
 
 May Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Brian
 J. Grearson, J.
 
 
  
 
  

William H. Sorrell, Attorney General, and David Tartter and
John Treadwell, Assistant

  Attorneys General, Montpelier, for
Plaintiff-Appellee.

 

Matthew Valerio, Defender General, and Seth Lipschutz,
Prisoners’ Rights Office, Montpelier,

  and Brian LeClair, Pro
Se, St. Johnsbury, for Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Burgess and
Robinson, JJ.

 

 

¶ 1.            
SKOGLUND, J.   Defendant appeals the superior court’s
denial of his motion to modify his sentence.  He contends that the court
erred in failing to award credit for time served.  We reverse the superior
court’s decision and grant defendant credit against the controlling burglary
sentence for the time he spent in jail between arrest and sentencing on the
later charges.

¶ 2.            
 On March 24, 2010, defendant was arrested and charged in Docket
Number 1098-3-10 Cncr with one count of burglary.  Bail was set at
$20,000.  Defendant was held for lack of bail from March 24, 2010 until
December 30, 2010, when bail was reduced to zero and he was released subject to
several conditions of release, including that he follow all conditions set by
the Chittenden County Adult Drug Treatment Court (ADTC), to which he had been
referred on December 20, 2010.  On February 10, 2011, pursuant to the
parties’ plea agreement, the court accepted defendant’s guilty plea to the
burglary charge with the understanding that if defendant successfully completed
ADTC, he would be given a sentence of two-to-five years, all suspended with
immediate discharge from probation, but if he was terminated from ADTC, the
State could seek a sentence of five-to-fifteen years to serve, with defendant
free to argue for a lesser sentence.

¶ 3.            
On April 2, 2012, while still participating in ADTC, defendant was
charged in Docket Number 1129-4-12 Cncr with first-degree unlawful restraint,
aggravated operation of a vehicle without the owner’s consent, reckless or
grossly negligent driving, burglary, and unlawful trespass.  Bail was set
at $50,000 on the new charges, but was not reset for the 2010 burglary charge.
 Defendant was held for lack of bail until September 18, 2012, when he was
sentenced on the new charges and resentenced on the burglary charge.

¶ 4.            
As a result of defendant’s incarceration, his participation in ADTC
ceased.  In a motion dated May 1, 2012 but not filed with the superior
court until August 1, 2012, the State sought defendant’s termination from
ADTC.  On August 10, 2012, the court terminated defendant’s enrollment in
ADTC, triggering sentencing on the predicate burglary offense.  On
September 18, 2012, as part of a global resolution of the charges he faced,
defendant was sentenced to serve three-to-five years for the 2010 burglary
offense, with credit for time served, including time spent in residential
treatment and stemming from ADTC sanctions.

¶ 5.            
That same day, pursuant to the parties’ plea agreement, defendant pled
guilty to three of the six 2012 charges.  Defendant received a sentence of
two-to-five years for those offenses, to be served concurrently with the
controlling three-to-five-year sentence for the 2010 burglary conviction, with
credit for time served.  The Department of Corrections gave defendant 287
days of credit against the sentence for the 2010 burglary conviction,
representing, for the most part, the period he was held without bail on the
2010 burglary charge before being released in December 2010.  The
Department also gave defendant 170 days of credit against the sentence for the
2012 convictions for time served between March 30, 2012, when he was arrested
and held on the 2012 charges, and September 18, 2012, the date of sentencing on
all of his pending charges. The Department did not, however, give defendant the
170-day credit against the minimum on his controlling three-to-five-year
sentence for the 2010 burglary conviction.

¶ 6.            
On November 7, 2012, defendant filed a motion to correct or modify his
sentence, requesting credit against his controlling sentence for the 170 days
he spent in custody between his arrest and sentencing on the 2012
charges.  The superior court denied the motion, stating in a
motion-reaction form that “defendant was not held [in 2012] for lack of bail on
[the 2010 burglary offense] and therefore is not entitled to credit on that
docket.”  Defendant appeals, arguing that he
should have received credit for the 170 days against each of the concurrent sentences. 
He contends that the court’s failure to grant him the 170-day credit on the
controlling sentence resulted in a de facto consecutive sentence for that
period of time, even though the court imposed the sentences to run
concurrently.  In response, the State contends that the court did not err
in denying defendant’s motion to modify his sentence because defendant was held
during the disputed 170-day period “in connection with” only the 2012 charges
and not the 2010 burglary conviction.  See 13 V.S.A. § 7031(b) (2012)
(“The court shall give the person credit toward service of his or her sentence
for any days spent in custody in connection with the offense for which the
sentence was imposed.”).[*]

¶ 7.            
We have recently clarified that one of the ways a defendant can
challenge the Department’s final calculation of credit for time served is
through review of the sentence in the superior court “under Vermont Rule of
Criminal Procedure 35(a) to determine whether the sentence is illegal under 13
V.S.A. § 7031(b) because it fails to give defendant credit for days spent in
custody in connection with the crime(s) for which defendant is
sentenced.”  State v. Sommer, 2011 VT 59, ¶ 8, 190 Vt. 236, 27 A.3d 1059.  When a defendant moves for sentence
reconsideration based on an alleged illegality of the sentence, the issue is a
question of law that we review de novo.  State v. Oscarson, 2006 VT
30, ¶ 7, 179 Vt. 442, 898 A.2d 123.

¶ 8.            
In support of the superior court’s decision, the State argues that this
case is governed by Marden v. Walton, 142 Vt. 204, 455 A.2d 321 (1982),
in which the petitioner had been released on probation for an earlier crime
when he was arrested and held for lack of bail on a subsequent offense. 
The petitioner’s probation was later revoked, but not until after his
conviction for the second sentence, which was imposed consecutive to the first
sentence.  While acknowledging that § 7031 is a remedial statute that must
be accorded a liberal construction protective of defendants’ rights, we held
that the petitioner in that case was not entitled to credit for time served
towards the first sentence for the period of time during which he was held for
lack of bail on the second offense.  In so holding, we reasoned as
follows:

  In the case
before us the limiting condition of “connection” is not satisfied.  The
time spent in custody, for which credit is claimed by petitioner, has no relation to, nor any connection with, [the
defendant’s earlier] offense or the resulting four-to-eight-year
sentence.  On the contrary, his incarceration [for the period in
question], was based solely and entirely on the bail mittimus resulting from
the [later] criminal offense for which he was subsequently convicted.  He
was entitled to, and in fact received, credit for that period, but only in
connection with the sentence imposed for the latter offense.

 

Id. at 207-08, 455 A.2d at 322.

¶ 9.            
Although our reasoning in Marden did not rely on whether the
sentences for the earlier and later convictions were imposed consecutively or
concurrently, the sentences in that case were in fact imposed consecutively,
which makes all the difference under our subsequent decision in Blondin. 
That case involved a defendant who was on parole for a murder conviction when
he was arrested for, and eventually convicted of, new offenses.  The
defendant’s parole was revoked as a result of his having been charged with the
new offenses, and he was later convicted on the new charges, resulting in a new
sentence to be served consecutively to the earlier sentence.  We declined
to grant defendant double credit against each of the sentences for the time
served between his arrest and conviction on the new charges, reasoning that
doing so “would, in effect, make the underlying and new sentences concurrent
for the six-month period” in question.  Blondin, 164 Vt. at 56, 665 A.2d at 589.  Accordingly, we held as follows:

[W]hen a defendant
is incarcerated based on conduct that leads both to revocation of probation or
parole and to conviction on new charges, the time spent in jail before the
second sentence is imposed should be credited toward only the first sentence if
the second sentence is imposed consecutively, but toward both sentences if the
second sentence is imposed concurrently.

 

Id. at 61, 665 A.2d at 592.  Thus, the crucial factor under Blondin
is whether the earlier and later sentences are to be served concurrently or
consecutively.  Id.

¶ 10.         The
State acknowledges our holding in Blondin but contends that Blondin
does not govern this case insofar as ADTC jurisdiction is not analogous to
probation or parole situations, in which defendants are subject to control by
the Department of Corrections and more intense scrutiny.  As noted, our
holding in Blondin turns more on the concurrence of the sentences than
the nature of probation or parole.  However, even if the nature of
probation or parole was central to that decision, the constraints of ADTC are sufficiently
analogous to probation to warrant invocation of the Blondin holding.

¶ 11.         Defendants
convicted of drug-related crimes pursuant to their agreement to participate in
ADTC are subject to various restrictions analogous to restrictions imposed on
probationers and parolees.  They are required to comply with orders from
the monitoring judge and to follow the treatment plan set up by the case
manager and treatment team.  To successfully complete ADTC, which lasts
anywhere from ten-to-eighteen months, defendants must satisfy all of the
program requirements during five separate program stages involving a
progression of steps aimed at overcoming the defendant’s drug dependence.
 Those stages, to a lesser or greater extent, require regular court appearances,
frequent random drug tests, mandatory daily check-ins, attendance at various
group counseling and community-support sessions, and regular contact with the
case manager and the probation officer, if applicable.  There are also
often conditions requiring the defendant to obtain housing, employment, and/or
a driver’s license.  Failure to comply with the program requirements
results in graduated sanctions that include increased curfew, community
service, termination from ADTC, incarceration, and imposition of a new, more
onerous sentence following termination from the program.  In short,
participating in ADTC is plainly analogous to serving a probationary sentence.

¶ 12.         Another
one of the conditions of ADTC is that participants may not commit any
additional criminal offenses or break any laws.  Although the State did
not seek, and the court did not order, defendant’s termination from ADTC until
August 2012, the State’s request for ADTC termination was dated on the first
day of the first month following defendant’s arraignment on the additional
charges, and defendant was not able to, and did not, participate in the program
at any time following his arrest on those charges.  Eventually, in
addition to being sentenced on the new charges, defendant received an increased
sentence on the earlier charge as the result of his arrest on the new charges
and termination from ADTC.  Most importantly, the court imposed those two
sentences to run concurrently, and thus, under Blondin, defendant was
entitled to credit against both sentences for the time he was incarcerated
following his arrest on the new charges.

¶ 13.         As we
noted in Blondin, denying or granting credit in concurrent-sentence
situations like the instant one based on when revocation proceedings or
resentencing was initiated or finalized would be illogical and unfair, as it
would result in credit being awarded depending on factors beyond the court’s
control, including how quickly or slowly the State acted in prosecuting the
defendant.  Id. at 61, 665 A.2d at 591-92. 
Accordingly, defendant is entitled to credit against each of the concurrent
sentences for the entire period he spent in jail between arrest and sentencing
on the additional charges.

Reversed and
remanded for resentencing consistent with this opinion.

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[*] 
Section 7031(b) of Title 13 was amended effective April 3, 2013. 2013, No. 4, § 1.  Because the statute was amended
after defendant was sentenced on all pending charges and, in any case, “neither
defines an offense nor prescribes a punishment,” State v. Blondin, 164
Vt. 55, 57 n.1, 665 A.2d 587, 589 n.1 (1995), the
earlier version of the statute cited above governs this case.  See 1
V.S.A. § 214(c) (“If the penalty or punishment for any offense is reduced by
the amendment of an act or statutory provision, the same shall be imposed in
accordance with the act or provision as amended unless imposed prior to the
date of the amendment.”); State v. Barron, 2011 VT 2, ¶ 38, 189 Vt. 193,
19 A.3d 620 (stating that § 214(c) operates “only if the sentence is not
imposed ‘prior to the date of the amendment’ ” (quoting § 214(c))). 
Defendant stated at oral argument that he is entitled to the 170-day credit
against his controlling sentence under either the old or new version of the
statute.  In effect, he argued that the amended version is a clarification
of existing law and provides further evidence of the correctness of his
position.  See State v. Kenvin, 2011 VT 123, ¶ 24, 191 Vt. 30, 38
A.3d 26 (stating that while we presume Legislature intended to change meaning
of statute it amends, we will recognize clarification of existing law when
circumstances clearly indicate it was intended).  We need not consider
whether the new version is a clarification of existing law or an amendment of
the prior version of the statute insofar as we conclude that defendant is
entitled to the additional 170 days of credit under our case law interpreting
the prior version of the law.