2014 VT 12

## State of Vermont v. Brian Aubuchon

[90 A.3d 914]

No. 13-140

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**

Opinion Filed January 24, 2014

*Michael Kainen*, Windsor County State's Attorney, White River Junction, for Plaintiff-Appellee.

*William W. Cobb* and *Cielo M. Mendoza* of *Law Offices of William W. Cobb, PLC*, Hyde Park, and *Brian S. Aubuchon*, Pro Se, Springfield, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals the superior court's denial of his request under Vermont Rule of Criminal Procedure 35 for additional credit toward his aggregated minimum sentence. We affirm.

¶ 2. The facts concerning the multiple charges filed against defendant and the subsequent sentencing are complicated, but can be summarized as follows. In Docket No. 321-7-10 Oecr (Orange Criminal Division), defendant was charged with larceny from the

person and held for lack of bail beginning on July 22, 2010. On March 16, 2011, he pled guilty and was sentenced to six months to three years on that charge. Because the credit for time served exceeded the minimum sentence, he was released on furlough immediately.

¶ 3. Two months later, on May 18, 2011, defendant was charged with assault and robbery, Docket No. 542-5-11 Wrcr (Windsor Criminal Division), and escape from furlough, Docket No. 487-4-11 Wrcr. That same day, defendant was held for lack of the $250,000 bail set by the court. While awaiting trial on those charges, defendant was also charged with two counts of larceny from the person in Docket Nos. 644-6-12 Wmcr (Windham Criminal Division) and 289-3-12 Wncr (Washington Criminal Division). Bail was set on those charges as well, and defendant remained in jail. At this time, defendant was still serving his sentence, albeit on furlough, on the initial Orange larceny-from-the-person conviction.

¶ 4. On January 10, 2013, defendant pled guilty to the four later charges. He received sentences of: 0-10 years consecutive to the Washington and Windham charges for the assault-and-robbery charge; 0-5 consecutive to all charges except the assault-and-robbery charge for the escape charge; 0-10 years consecutive to all other charges for the Washington larceny-from-the-person charge; and 2-10 years consecutive to then-existing sentences, as well as the assault-and-robbery and Washington larceny-from-the-person charges, for the Windham larceny-from-the-person charge. Each of the mittimuses gave credit for time served according to the law. The Department of Corrections' ensuing sentence computation indicated an aggregate sentence of 2-38 years and awarded defendant 236 days against the aggregate maximum for time served.

¶ 5. In February 2013, defendant filed a grievance with the Department of Corrections, asserting that its sentence computation was incorrect and that he was entitled to more credit than given. The Department responded that defendant was not given credit against his aggregate minimum because the sentences for the second set of charges were imposed consecutively to the original sentence. Defendant then moved for sentence reduction under Vermont Rule of Criminal Procedure 35, asking the superior court to correct the aggregate minimum and maximum to indicate 30 months to 33 years, and further to instruct the Department to credit him for the 604 days he spent in jail

between his arraignment on the second set of charges and his sentencing on those charges.

¶ 6. On a motion-reaction form, the court: (1) granted the motion in part by ordering that the mittimuses in Docket Nos. 542-5-11 Wrcr (assault and robbery) and 487-4-11 Wrcr (escape) reflect that the sentences for those two charges were to be imposed concurrently; and (2) denied the motion in part by refusing to give defendant additional credit toward the minimum aggregate sentence. The Department's revised sentence computation did not apply the additional credit requested by defendant. This appeal followed.

¶ 7. Defendant argues on appeal that: (1) his sentences were not correctly aggregated; (2) he is entitled to additional credit under a recent legislative enactment, which should apply to his case because it clarified rather than amended the sentencing law existing at the time of his sentencing; and (3) even under the prior existing law, he is entitled to the additional credit because his furlough status on his first sentence was never revoked following his arrest and incarceration on the second set of charges and he was held solely for lack of bail on those charges. The State responds that: (1) defendant waived any argument that the new legislative enactment applies to this case by not raising it before the superior court; (2) the newly enacted legislation was an amendment rather than a clarification and thus does not govern this case; (3) defendant is not entitled to credit under the law applicable at the time of his sentencing; and (4) under the procedural posture of this case, defendant should have filed a motion under Vermont Rule of Civil Procedure 75 rather than criminal Rule 35 to challenge the Department's recalculation of his sentence.

¶ 8. As an initial matter, we reject the State's procedural arguments. Regarding the latter argument, the State relies upon *State v. Young*, 2007 VT 30, 181 Vt. 603, 925 A.2d 1016 (mem.), to support its argument that defendant pursued the wrong avenue of relief in this appeal. In *Young*, the trial court revoked the defendant's probation and imposed the underlying sentence with "credit for time served according to law." *Id.* ¶ 3. Noting that the trial court was not required to calculate credit for time served and that in general the Department of Corrections was better suited to do so, we dismissed the defendant's challenge of his sentence

under Rule 35. *Id.* ¶¶ 4-5. We ruled that he should have grieved the Department's calculation of credit and then, if necessary, appealed the Department's response to his grievance to the superior court under Vermont Rule of Civil Procedure 75. *Id.* ¶ 5.

¶ 9. ▮▮▮▮ We also noted in *Young*, however, that in some cases the trial court is in a better position than the Department to calculate credit for time served, "as when the calculation depends on legal determinations the [Department] is less equipped to make." *Id.* ¶ 4 n.*. In this case, defendant grieved the initial calculation of credit with the Department, but, when that grievance was denied, filed a Rule 35 motion with the superior court and then appealed to this Court from the superior court's ruling on that motion. This was a proper procedural avenue for addressing his legal claim regarding the calculation of credit. See *State v. Sommer*, 2011 VT 59, ¶ 8, 190 Vt. 236, 27 A.3d 1059 (discussing *Young* and clarifying that one option for challenging calculation of credit is under Rule 35 "to determine whether the sentence is illegal under 13 V.S.A. § 7031(b) because it fails to give defendant credit for days spent in custody in connection with the crime(s) for which defendant is sentenced"). Although the amended mittimus following the court's denial of defendant's Rule 35 motion instructed the Department to apply credit for time served "according to [the] law," the court had already denied in part defendant's Rule 35 motion, making the legal determination that defendant was not entitled to the additional credit toward his aggregate minimum sentence that he requested.

¶ 10. We also reject the State's assertion that we should not consider whether the newly enacted legislation regarding credit for time served governs this case because defendant did not raise this argument below and the trial court never considered it. The short answer to the State's assertion is that defendant could not have raised the issue of whether the new legislation should be applied retroactively because that legislation was not enacted into law and made effective until after the filing of the instant appeal. Accordingly, we will address the issue of the effect, if any, of the new legislation on this case.

¶ 11. Defendant argues that the "central issue" in this case is whether the new legislation, 2013, No. 4, is applicable to this case. Relying primarily on *State v. Kenvin*, 2011 VT 123, 191 Vt. 30, 38 A.3d 26, and a summary statement of Act 4 provided by the Office

of Legislative Counsel, defendant argues that the relevant part of the act merely clarified the preexisting statute and thus is applicable to this case. We find no merit to this argument.

¶ 12. ■ ■ Defendant was sentenced on all pending charges on January 10, 2013. The relevant statute —13 V.S.A. § 7031(b) — was amended effective April 3, 2013. See 2013, No. 4, § 1. As we recently held in another case involving § 7031(b), because the statute "was amended after defendant was sentenced on all pending charges and, in any case, 'neither defines an offense nor prescribes a punishment,' *State v. Blondin*, 164 Vt. 55, 57 n.1, 665 A.2d 587, 589 n.1 (1995), the earlier version of the statute . . . governs this case."[1] *State v. LeClair*, 2013 VT 114, ¶ 6 n.*, 195 Vt. 295, 88 A.3d 1186; see 1 V.S.A. § 214(c) ("If the penalty or punishment for any offense is reduced by the amendment of an act or statutory provision, the same shall be imposed in accordance with the act or provision as amended unless imposed prior to the date of the amendment."); *State v. Barron*, 2011 VT 2, ¶ 38, 189 Vt. 193, 16 A.3d 620 (stating that § 214(c) applies "only if the sentence is not imposed 'prior to the date of the amendment' " (quoting § 214(c))).

¶ 13. Defendant argues, however, that because the Legislature intended the current version of § 7031(b) to clarify rather than amend the meaning of the earlier version of the statute, the meaning attributable to the new version governs this case. In so arguing, defendant relies primarily upon *Kenvin*, wherein we concluded that a 2011 legislative revision to § 7031(a) was a clarification of that provision retroactively applicable to the case at issue. 2011 VT 123, ¶¶ 23-26. In so ruling, we relied in part upon the fact that a legislative summary described the new provision as clarifying the law, that the Legislature made the provision effective immediately upon passage of the act, and that the provision was added to overturn a recent decision issued by this Court. *Id.*

---

[1] Defendant also relies upon 13 V.S.A. § 7032(c)(2), which was amended along with § 7031(b) by Act 4, see 2013, No. 4, § 2, and which also neither defines an offense nor prescribes a punishment. One of defendant's arguments on appeal is that his aggregate minimum and maximum sentences should have been two and one-half years to thirty-three years, instead of the aggregate two-to-thirty-three-year sentence indicated by the court in its ruling on his motion for sentence reduction. In light of our decision as set forth below, we need not address this argument.

¶ 25. Defendant asserts that, as in *Kenvin*, the revisions in this case were described in a legislative summary as clarifications of the law, were made effective immediately upon passage, and were made in response to our past decisions.

¶ 14. As an initial matter, it is not clear that the revisions to §§ 7031(b) and 7032(c)(2) were made in direct response to any specific case law. Act 4 came about as the result of the Legislature charging the Chief Justice, the Commissioner of Corrections, the Defender General, and the executive director of the Department of State's Attorneys, or their designees, to collaboratively examine sentence computation issues and report back to the Legislature on December 15, 2009. See 2009, No. 58, § 17. On December 21, 2009, following four meetings during the previous summer, one of the Chief Justice's designees, the Administrative Judge for the Trial Courts, sent a memorandum to the members of the House Judiciary Committee, the Senate Judiciary Committee, and the House Committee on Corrections and Institutions, explaining how the new proposed law on sentence calculations — which closely resembled what was eventually passed as Act 4 in a later legislative session — differed from the current law. The memorandum of law explained that, contrary to the statute then in effect, the proposed law would give defendants credit for time served from the time of arraignment to the time of sentencing irrespective of whether the time served was connected to the offense being sentenced or to an offense that had been dismissed. The memorandum even provided a specific example of how the proposed law would differ from the then-current law.

¶ 15. ■ ■ The Legislature eventually passed Act 4, which, as noted, is very similar to the law initially proposed by the committee in response to Act 58. Whatever the meaning of Act 4, it plainly was intended to change the existing statute and set forth new law simplifying the calculation of credit. Indeed, in critical part, the new law dropped the longstanding "in connection with" language from the prior version of § 7031(b) and replaced it with language intended to change how credit was calculated under the then-existing statute. Thus, Act 4 appears to have been enacted as a comprehensive revision of sentencing law regarding credit for time served rather than as a direct response to specific case law. In any event, Act 4 cannot be viewed as merely

clarifying the meaning of the prior statutes.[2]

---

[2] Sections 1 and 2 of Act 4 reveal significant changes to the statutes at issue in this case:

Sec. 1. 13 V.S.A. § 7031 is amended to read:

. . . .

(b) The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which the person is received at the correctional facility for service of the sentence. The court shall give the person credit toward service of his or her sentence for any days spent in custody ~~in connection with the offense for which sentence was imposed~~ *as follows*:

*(1) The period of credit for concurrent and consecutive sentences shall include all days served from the date of arraignment or the date of the earliest detention for the offense, whichever occurs first, and end on the date of the sentencing. Only a single credit shall be awarded in cases of consecutive sentences, and no credit for one period of time shall be applied to a later period.*

*(2) In sentencing a violation of probation, the court shall give the person credit for any days spent in custody from the time the violation is filed or the person is detained on the violation, whichever occurs first, until the violation is sentenced. In a case in which probation is revoked and the person is ordered to serve the underlying sentence, the person shall receive credit for all time previously served in connection with the offense.*

. . . .

Sec. 2. 13 V.S.A. § 7032(c) is amended to read:

(c) In all cases where multiple or additional sentences have been or are imposed, the term or terms of imprisonment under those sentences shall be determined in accordance with the following definitions~~.~~*:*

. . . .

*(2)* When terms run consecutively, the minimum terms are added to arrive at an aggregate minimum to be served equal to the sum of all minimum terms and the maximum terms are added to arrive at an aggregate maximum equal to the sum of all maximum terms. *A person shall serve no more time on consecutive minimum sentences than the sum of the minimum terms, regardless of whether the sentences are imposed on the same or different dates. If a person has served a minimum term and subsequently incurs another criminal charge, the time the person spends in custody awaiting disposition of the new charge shall count toward the minimum term of the new sentence, if one is imposed. This subdivision shall not require the Department of Corrections to release a person from incarceration to community supervision at the person's minimum term.*

2013, No. 4, §§ 1-2

¶ 16. ■ ■ But even assuming that this case is analogous to *Kenvin* because the relevant revisions in Act 4 were a direct response to *Blondin* and its progeny, we now reject the language in *Kenvin* suggesting that a legislative enactment intended to "correct" an opinion of this Court should be applied retrospectively as a clarification of what the law had always been. See *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 305 (1994) ("Because retroactivity raises special policy concerns, the choice to enact a statute that responds to a judicial decision is quite distinct from the choice to make the responding statute retroactive."). Generally, "statutes operate only prospectively, while judicial decisions operate retrospectively." *Id.* at 311 (quotation omitted). The legislative branch, however, has the power, subject to constitutional constraints, to determine when a statute will become effective. *Id.* at 313 n.12. Nevertheless, when a court of last resort "construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Id.* Hence, "[a]fter the judiciary definitively and finally interprets a statute, . . . the Legislature may amend the statute to say something different. But if it does so, it *changes* the law; it does not merely state what the law always was." *McClung v. Emp't Dev. Dep't*, 99 P.3d 1015, 1018 (Cal. 2004) (citation omitted).

¶ 17. ■ Thus, while a statutory amendment may clarify the meaning of an earlier version of the statute not yet construed by a court of last resort, "a clarifying enactment cannot be applied retrospectively when it contravenes a construction placed on the original statute by the judiciary." *State v. Dunaway*, 743 P.2d 1237, 1241 n.6 (Wash. 1987); see *State v. Rios*, 237 P.3d 1052, 1057 (Ariz. Ct. App. 2010) ("[O]nce the supreme court has rendered a final judgment interpreting a substantive statute, the Legislature cannot later retroactively construe what the statute meant in conflict with the judicial decision."); *McClung*, 99 P.3d at 1020 ("Because this court had already finally and definitively interpreted [the statute at issue], the Legislature had no power to decide that the later amendment merely declared existing law."); *State v. Maples*, 286 P.3d 386, 389 (Wash. Ct. App. 2012) (holding that statutory provision did not apply retrospectively based on "bedrock principle that the legislature cannot contravene an existing judicial construction of a statute"). Accordingly, a statute

intended "to correct a judicial interpretation of a prior law which the legislature considers inaccurate" is given prospective effect only. 1A N. Singer & J. Singer, Statutes and Statutory Construction § 27:4, at 614-15 (7th ed. 2009). "Any other result would make the legislature a court of last resort." *Id.*

¶ 18. ▇▇▇ On the other hand, if "courts have not yet finally and conclusively interpreted a statute and are in the process of doing so, a declaration of a later Legislature as to what an earlier Legislature intended is entitled to consideration" but is not binding or conclusive as to the statute's meaning. *McClung*, 99 P.3d at 1019-20. This is because it is the task of the judiciary, not the legislature, to interpret a statute. The legislature may define the meaning of statutory language by enacting new law and may apply that law retroactively within constitutional bounds, "[b]ut it has no legislative authority simply to say what it *did* mean." *Id.* at 1020 (quotation omitted). In short, although a legislature may amend a statute to overrule a judicial decision, by doing so, it changes the law, and thus a prospective application of the law is presumed.

¶ 19. ▇▇▇ In *Kenvin*, 2011 VT 123, ¶ 24 n.2, we cited *Western Security Bank v. Superior Court*, 933 P.2d 507, 514 (Cal. 1997), for the general principle that when the Legislature enacts a clarifying amendment, the true meaning of the earlier version of the statute remains the same. This principle is generally true, but, as explained above, not when the Legislature seeks to overturn a final judicial decision of a court of last resort. See *McClung*, 99 P.3d at 1022 (distinguishing *Western Security Bank* on basis that "the only judicial action that had interpreted the statute before the Legislature amended it was a Court of Appeal decision that never became final").

¶ 20. We also held in *Kenvin* that the Legislature's amendment of a statute in direct response to our recent decision indicated that it intended the new law to be a clarification of what the law always was rather than a change in the law. 2011 VT 123, ¶ 25. But the one Vermont case we cited in support of that holding involved a legislative amendment enacted in response to pending litigation rather than a prior judicial decision, see *In re Shantee Point, Inc.*, 174 Vt. 248, 258, 811 A.2d 1243, 1251 (2002), and the two out-of-state cases that we cited involved legislative enactments

in response to decisions by courts that were not courts of last resort in the state. See *In re Oswalt*, 444 F.3d 524, 528-29 (6th Cir. 2006) (determining that legislative enactment responding to decision by Sixth Circuit Court of Appeals interpreting Michigan law was clarification of law entitled to retroactive effect); *Oxford Tire Supply, Inc. v. Comm'r of Revenue Servs.*, 755 A.2d 850, 856 (Conn. 2000) (concluding that legislative enactment in direct response to trial court decision was clarification entitled to retroactive effect).

¶ 21. Accordingly, for the reasons stated above, we overrule *Kenvin* to the extent it suggested that a statutory amendment rejecting this Court's prior interpretation of a statute should be applied retroactively as a clarification of the law. Even if Act 4 was enacted in response to decisions by this Court, that fact would not indicate any legislative intent to apply the act retroactively. Nor do we find any other indication that the Legislature intended for Act 4 to apply retrospectively. See *Northwood AMC Corp. v. Am. Motors Corp.*, 139 Vt. 145, 148, 423 A.2d 846, 848 (1980) ("We very early held that, absent the 'most clear and unequivocal language' a statute affecting legally existing rights should not be construed retrospectively." (quoting *Briggs v. Hubbard*, 19 Vt. 86, 90-91 (1846))).

¶ 22. Given our conclusion that the language and legislative history of Act 4 unequivocally demonstrate that the act amended rather than clarified prior law, we find no significance in the fact that a summary statement of the Office of Legislative Counsel used the word "clarify" to describe what the Act did.[3] In any

---

[3] Legislative counsel's summary of the effect of Act 4, in relevant part, stated as follows:

- Clarify how credit for time spent in prison prior to sentencing is applied to a sentence (starts from the time you are detained)[.]

- Clarify that if a person is sentenced to consecutive sentences, the new minimum for time to serve is the sum of the minimum terms. If someone spends additional time on detention awaiting disposition of another charge, it is credited to the new minimum.

Summary of the Acts and Resolves of the 2013 Vermont General Assembly, No. 4, available at http://www.leg.state.vt.us/reports/2013ExternalReports/292522.pdf.

event, to the extent that defendant is arguing that legislative counsel's summary is equivalent to the Legislature declaring the new law to be a clarification rather than an amendment, the mere labeling of a new law as a clarification of existing law does not make it so. See *In re D.K.*, 2012 VT 23, ¶¶ 7-9, 191 Vt. 328, 47 A.3d 347 (stating that new law plainly changed prior law and could not be considered mere clarification of law, notwithstanding fact that Legislature "took pains" to describe it as such); *McClung*, 99 P.3d at 1020 ("A declaration that a statutory amendment merely clarified the law cannot be given an obviously absurd effect, and the court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms." (quotation omitted)).

¶ 23. ▮▮ ▮▮ We are left, then, with the fact that Act 4, by its own terms, became effective immediately upon passage. This fact alone does not indicate that the Legislature intended the act to apply retrospectively. See *Kenvin*, 2011 VT 123, ¶ 24 ("We presume that the Legislature intended to change the meaning of a statute when it amends it, but we will recognize clarification of the law where the circumstances clearly indicate it was intended.") (quotation omitted).

¶ 24. ▮▮ In light of our conclusion that Act 4 did not merely clarify existing law and does not apply retroactively, we must examine the law that was in place at the time defendant was sentenced in January 2013 to determine if he is entitled to credit for time served beyond what was afforded by the Department of Corrections and the superior court. At the time of his sentencing, defendant was entitled under § 7031(b) to credit "for any days spent in custody in connection with the offense for which sentence was imposed." Construing that version of § 7031(b) in *Blondin*, 164 Vt. at 61, 665 A.2d at 592, we held that "when a defendant is incarcerated based on conduct that leads to revocation of probation or parole and to conviction on new charges, the time spent in

---

There is no indication that the use of the word clarify in the legislative summary was intended as a term of art to distinguish legislation that clarifies as opposed to amends, or in this case to suggest that Act 4 merely clarified and did not amend the substance of existing law. In any case, as noted, the language of the new law, as well as the explanation by the legislatively appointed committee that proposed an earlier version of the new law, demonstrate otherwise.

jail before the second sentence is imposed should be credited toward only the first sentence if the second sentence is imposed consecutively, but toward both sentences if the second sentence is imposed concurrently." This holding has been reaffirmed by this Court on several occasions, including recently, see *State v. LeClair*, 2013 VT 113, ¶ 9; *Martel v. Lanman*, 171 Vt. 547, 548, 759 A.2d 65, 66 (2000) (mem.), and "has been uniformly recognized by both federal and state courts in jurisdictions having statutory language similar to 13 V.S.A. § 7031(b)." *Sommer*, 2011 VT 59, ¶ 12.

¶ 25. In this case, defendant's second set of sentences was imposed consecutively to his initial sentence, which he was still serving on furlough when he was charged with the new offenses. Defendant acknowledges this fact and our holding in *Blondin*, but insists that *Blondin* does not govern in this instance because his furlough status was · never revoked and he was detained on the second set of charges solely based on his failure to make bail on those charges. Relying on *Ali v. District of Columbia*, 612 A.2d 228, 230 (D.C. 1992), which was cited in *Blondin*, 164 Vt. at 60-61, 665 A.2d at 591, defendant argues that he must be credited against the second set of charges for the time he spent in jail following his arrest on those charges in light of the fact that his furlough on the initial conviction was not revoked and thus he was held solely for lack of bail on those charges.

¶ 26. ■■ ■■ We find this argument unavailing. In *Blondin*, we cited *Ali* as an example of a case that took the "unacceptable" position of denying double credit based on the timing of probation or parole revocation proceedings, even when convictions on new charges were imposed concurrently to the initial sentence. 164 Vt. at 60-61, 665 A.2d at 591-92. Here, irrespective of when, or if, his furlough was revoked based on the new charges, the fact remains that defendant was still serving his sentence, albeit in the community, when he was arrested and incarcerated on the new charges. As we stated recently in *LeClair*, 2013 VT 114, ¶¶ 9-10, "the crucial factor in *Blondin* is whether the earlier and later sentences are to be served concurrently or consecutively," and thus, "our holding in *Blondin* turns more on the concurrence of the sentences than the nature of probation or parole" — or furlough for that matter. Under the rule in *Blondin*, given that defendant's convictions on the second set of charges were imposed consecutively to his initial sentence, he was not entitled to double credit for the time he was incarcerated following his arrest on the

second set of charges, notwithstanding that his furlough status on the initial conviction was not revoked.

*Affirmed.*