2014 VT 12



State v. Aubuchon (2013-140)

 

2014 VT 12

 

[Filed 24-Jan-2014]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2014 VT 12
 
  


 No. 2013-140
 
  


 State of Vermont
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Windsor Unit,
 
 
  
 
 
 Criminal Division
 
 
  
 
 
  
 
 
 Brian Aubuchon
 
 
 November Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Robert
 P. Gerety, Jr., J.
 
 
  
 
 Michael Kainen, Windsor County State’s Attorney, White River
Junction, for 

  Plaintiff-Appellee.

 

William W. Cobb and Cielo M. Mendoza of Law Offices of
William W. Cobb, PLC, Hyde Park,

  and Brian S. Aubuchon, Pro
Se, Springfield, for Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and
Crawford, JJ.

 

 

¶ 1.            
SKOGLUND, J.   Defendant appeals the superior court’s
denial of his request under Vermont Rule of Criminal Procedure 35 for
additional credit toward his aggregated minimum sentence.  We affirm.

¶ 2.            
The facts concerning the multiple charges filed against defendant and
the subsequent sentencing are complicated, but can be summarized as
follows.  In Docket No. 321-7-10 Oecr (Orange Criminal Division), defendant
was charged with larceny from the person and held for lack of bail beginning on
July 22, 2010.  On March 16, 2011, he pled guilty and was sentenced to six
months to three years on that charge.  Because the credit for time served
exceeded the minimum sentence, he was released on furlough immediately.

¶ 3.            
Two months later, on May 18, 2011, defendant was charged with assault
and robbery, Docket No. 542-5-11 Wrcr (Windsor Criminal Division), and escape
from furlough, Docket No. 487-4-11 Wrcr.  That same day, defendant was
held for lack of the $250,000 bail set by the court.  While awaiting trial
on those charges, defendant was also charged with two counts of larceny from
the person in Docket Nos. 644-6-12 Wmcr (Windham Criminal Division) and
289-3-12 Wncr (Washington Criminal Division).  Bail was set on those
charges as well, and defendant remained in jail.  At this time, defendant
was still serving his sentence, albeit on furlough, on the initial Orange
larceny-from-the-person conviction.

¶ 4.            
On January 10, 2013, defendant pled guilty to the four later
charges.  He received sentences of: 0-10 years consecutive to the
Washington and Windham charges for the assault-and-robbery charge; 0-5
consecutive to all charges except the assault-and-robbery charge for the escape
charge; 0-10 years consecutive to all other charges for the Washington
larceny-from-the-person charge; and 2-10 years consecutive to then-existing
sentences, as well as the assault-and-robbery and Washington larceny-from-the-person
charges, for the Windham larceny-from-the-person charge.  Each of the
mittimuses gave credit for time served according to the law.  The
Department of Corrections’ ensuing sentence computation indicated an aggregate
sentence of 2-38 years and awarded defendant 236 days against the aggregate
maximum for time served. 

¶ 5.            
In February 2013, defendant filed a grievance with the Department of
Corrections, asserting that its sentence computation was incorrect and that he
was entitled to more credit than given.  The Department responded that
defendant was not given credit against his aggregate minimum because the
sentences for the second set of charges were imposed consecutively to the
original sentence.  Defendant then moved for sentence reduction under
Vermont Rule of Criminal Procedure 35, asking the superior court to correct the
aggregate minimum and maximum to indicate 30 months to 33 years, and further to
instruct the Department to credit him for the 604 days he spent in jail between
his arraignment on the second set of charges and his sentencing on those
charges.

¶ 6.            
On a motion-reaction form, the court: (1) granted the motion in part by
ordering that the mittimuses in Docket Nos. 542-5-11 Wrcr (assault and robbery)
and 487-4-11 Wrcr (escape) reflect that the sentences for those two charges
were to be imposed concurrently; and (2) denied the motion in part by refusing
to give defendant additional credit toward the minimum aggregate
sentence.  The Department’s revised sentence computation did not apply the
additional credit requested by defendant.  This appeal followed.

¶ 7.            
Defendant argues on appeal that: (1) his sentences were not correctly
aggregated; (2) he is entitled to additional credit under a recent legislative
enactment, which should apply to his case because it clarified rather than
amended the sentencing law existing at the time of his sentencing; and (3) even
under the prior existing law, he is entitled to the additional credit because
his furlough status on his first sentence was never revoked following his
arrest and incarceration on the second set of charges and he was held solely
for lack of bail on those charges.  The State responds that: (1) defendant
waived any argument that the new legislative enactment applies to this case by
not raising it before the superior court; (2) the newly enacted legislation was
an amendment rather than a clarification and thus does not govern this case;
(3) defendant is not entitled to credit under the law applicable at the time of
his sentencing; and (4) under the procedural posture of this case, defendant
should have filed a motion under Vermont Rule of Civil Procedure 75 rather than
criminal Rule 35 to challenge the Department’s recalculation of his sentence.

¶ 8.            
As an initial matter, we reject the State’s procedural arguments. 
Regarding the latter argument, the State relies upon State v. Young,
2007 VT 30, 181 Vt. 603, 925 A.2d 1016, to support its argument that defendant
pursued the wrong avenue of relief in this appeal.  In Young, the
trial court revoked the defendant’s probation and imposed the underlying
sentence with “credit for time served according to the law.”  Id. ¶ 3.  Noting that the trial court was not
required to calculate credit for time served and that in general the Department
of Corrections was better suited to do so, we dismissed the defendant’s
challenge of his sentence under Rule 35.  Id. ¶ 4-5.  We
ruled that he should have grieved the Department’s calculation of credit and
then, if necessary, appealed the Department’s response to his grievance to the
superior court under Vermont Rule of Civil Procedure 75.  Id. ¶ 5.

¶ 9.            
We also noted in Young, however, that in some cases the trial
court is in a better position than the Department to calculate credit for time
served, “as when the calculation depends on legal determinations the
[Department] is less equipped to make.”  Id. ¶ 4
n.*.  In this case, defendant grieved the initial calculation of
credit with the Department, but, when that grievance was denied, filed a Rule
35 motion with the superior court and then appealed to this Court from the
superior court’s ruling on that motion.  This was a proper procedural
avenue for addressing his legal claim regarding the calculation of
credit.  See State v. Sommer, 2011 VT 59, ¶ 8, 190 Vt. 236, 27 A.3d
1059 (discussing Young and clarifying that one option for challenging
calculation of credit is under Rule 35 “to determine whether the sentence is
illegal under 13 V.S.A. § 7031(b) because it fails to give defendant credit for
days spent in custody in connection with the crime(s) for which defendant is
sentenced”).  Although the amended mittimus following the court’s denial
of defendant’s Rule 35 motion instructed the Department to apply credit for
time served “according to [the] law,” the court had already denied in part
defendant’s Rule 35 motion, making the legal determination that defendant was
not entitled to the additional credit toward his aggregate minimum sentence
that he requested.

¶ 10.         We
also reject the State’s assertion that we should not consider whether the newly
enacted legislation regarding credit for time served governs this case because
defendant did not raise this argument below and the trial court never
considered it.  The short answer to the State’s assertion is that
defendant could not have raised the issue of whether the new legislation should
be applied retroactively because that legislation was not enacted into law and
made effective until after the filing of the instant appeal.  Accordingly,
we will address the issue of the effect, if any, of the new legislation on this
case.

¶ 11.         Defendant
argues that the “central issue” in this case is whether the new legislation,
2013, No. 4, is applicable to this case.  Relying primarily on State v.
Kenvin, 2011 VT 123, 191 Vt. 30, 38 A.3d 26, and a summary statement of Act
4 provided by the Office of Legislative Counsel, defendant argues that the relevant
part the act merely clarified the preexisting statute and thus is applicable to
this case.  We find no merit to this argument.

¶ 12.         Defendant
was sentenced on all pending charges on January 10, 2013.  The relevant
statute—13 V.S.A. § 7031(b)—was amended effective April 3, 2013.  See 2013, No. 4, § 1.  As we recently held in another
case involving § 7031(b), because the statute “was amended after defendant
was sentenced on all pending charges and, in any case, ‘neither defines an
offense nor prescribes a punishment,’ State v. Blondin, 164 Vt. 55, 57
n.1, 665 A.2d 587, 589 n.1 (1995), the earlier version of the statute . . .
governs this case.”[1] 
State v. LeClair, 2013 VT 114, ¶ 6 n.*, ___ Vt. ___, ___ A.3d ___;
see 1 V.S.A. § 214(c) (“If the penalty or punishment for any offense is
reduced by the amendment of an act or statutory provision, the same shall be
imposed in accordance with the act or provision as amended unless imposed prior
to the date of the amendment.”); State v. Barron, 2011 VT 2, ¶ 38, 189
Vt. 193, 16 A.3d 620 (stating that § 214(c) applies “only if the sentence is
not imposed ‘prior to the date of the amendment’ ” (quoting § 214(c))).

¶ 13.         Defendant
argues, however, that because the Legislature intended the current version of §
7031(b) to clarify rather than amend the meaning of the earlier version of the
statute, the meaning attributable to the new version governs this case. 
In so arguing, defendant relies primarily upon Kenvin, wherein we
concluded that a 2011 legislative revision to § 7031(a) was a clarification of
that provision retroactively applicable to the case at issue.  2011 VT
123, ¶¶ 23-26.  In so ruling, we relied in part upon the fact that a
legislative summary described the new provision as clarifying the law, that the
Legislature made the provision effective immediately upon passage of the act,
and that the provision was added to overturn a recent decision issued by this
Court.  Id. ¶ 25.  Defendant
asserts that, as in Kenvin, the revisions in this case were described in
a legislative summary as clarifications of the law, were made effective
immediately upon passage, and were made in response to our past decisions.

¶ 14.         As an
initial matter, it is not clear that the revisions to §§ 7031(b) and 7032(c)(2) were made in direct response to any specific case
law.  Act 4 came about as the result of the Legislature charging the Chief
Justice, the Commissioner of Corrections, the Defender General, and the
executive director of the Department of State’s Attorneys, or their designees,
to collaboratively examine sentence computation issues and report back to the
Legislature on December 15, 2009.  See 2009, No. 58, §
17.  On December 21, 2009, following four meetings during the
previous summer, one of the Chief Justice’s designees, the Administrative Judge
for the Trial Courts, sent a memorandum to the members of the House Judiciary
Committee, the Senate Judiciary Committee, and the House Committee on
Corrections and Institutions, explaining how the new proposed law on sentence
calculations—which closely resembled what was eventually passed as Act 4 in a
later legislative session—differed from the current law.  The memorandum of
law explained that, contrary to the statute then in effect, the proposed law
would give defendants credit for time served from the time of arraignment to
the time of sentencing irrespective of whether the time served was connected to
the offense being sentenced or to an offense that had been dismissed.  The
memorandum even provided a specific example of how the proposed law would
differ from the then-current law.

¶ 15.         The
Legislature eventually passed Act 4, which, as noted, is very similar to the
law initially proposed by the committee in response to Act 58.  Whatever
the meaning of Act 4, it plainly was intended to change the existing statute
and set forth new law simplifying the calculation of credit.  Indeed, in
critical part, the new law dropped the longstanding “in connection with”
language from the prior version of § 7031(b) and replaced it with language
intended to change how credit was calculated under the then-existing
statute.  Thus, Act 4 appears to have been enacted as a comprehensive revision
of sentencing law regarding credit for time served rather than as a direct
response to specific case law.  In any event, Act 4 cannot be viewed as
merely clarifying the meaning of the prior statutes.[2]

¶ 16.          But
even assuming that this case is analogous to Kenvin because the relevant
revisions in Act 4 were a direct response to Blondin and its progeny, we
now reject the language in Kenvin suggesting that a legislative
enactment intended to “correct” an opinion of this Court should be applied
retrospectively as a clarification of what the law had always been.  See Rivers
v. Roadway v. Express, Inc., 511 U.S. 298, 305 (1994) (“Because
retroactivity raises special policy concerns, the choice to enact a statute
that responds to a judicial decision is quite distinct from the choice to make
the responding statute retroactive.”).  Generally, “statutes operate only
prospectively, while judicial decisions operate retrospectively.”  Id. at 311 (quotation omitted).  The legislative
branch, however, has the power, subject to constitutional constraints, to
determine when a statute will become effective.  Id. at 313 n.12.  Nevertheless, when a court of last resort
“construes a statute, it is explaining its understanding of what the statute
has meant continuously since the date when it became law.”  Id. 
Hence, “[a]fter the judiciary definitively and finally interprets a statute, . . . the Legislature may amend the statute to say
something different.  But if it does so, it changes the law; it
does not merely state what the law always was.”  McClung
v. Emp’t Dev. Dep’t, 99 P.3d 1015, 1018 (Cal. 2004) (citation omitted).

¶ 17.         Thus,
while a statutory amendment may clarify the meaning of an earlier version of
the statute not yet construed by a court of last resort, “a clarifying
enactment cannot be applied retrospectively when it contravenes a construction
placed on the original statute by the judiciary.”  State v. Dunaway,
743 P.2d 1237, 1241 n.6 (Wash. 1987); see State v. Rios, 237 P.3d 1052,
1057 (Ariz. Ct. App. 2010) (“[O]nce the supreme court has rendered a final
judgment interpreting a substantive statute, the Legislature cannot
retroactively construe what the statute meant in conflict with the judicial
decision.”); McClung, 99 P.3d at 1020 (“Because this court had already
finally and definitively interpreted [the statute at issue], the Legislature
had no power to decide that the later amendment merely declared existing
law.”); State v. Maples, 286 P.3d 386, 389 (Wash. Ct. App. 2012)
(holding that statutory provision did not apply retrospectively based on
“bedrock principle that the legislature cannot contravene an existing judicial
construction of a statute”).  Accordingly, a statute intended “to correct
a judicial interpretation of a prior law which the legislature considers
inaccurate” is given prospective effect only.  1A N.
Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 27:4,
at 614-15 (7th ed. 2009).  “Any other result would make the
legislature a court of last resort.”  Id. 

¶ 18.         On
the other hand, if “courts have not yet finally and conclusively interpreted a
statute and are in the process of doing so, a declaration of a later
Legislature as to what an earlier Legislature intended is entitled to
consideration” but is not binding or conclusive as to the statute’s
meaning.  McClung, 99 P.3d at 1019-20. 
This is because it is the task of the judiciary, not the Legislature, to
interpret a statute.  The Legislature may define the meaning of statutory
language by enacting new law and may apply that law retroactively within
constitutional bounds, “[b]ut it has no legislative authority simply to say
what it did mean.”  Id. at 1020 (quotation
omitted).  In short, although a Legislature may amend a statute to
overrule a judicial decision, by doing so, it changes the law, and thus a
prospective application of the law is presumed.
       

¶ 19.         In Kenvin,
2011 VT 123, ¶ 24 n.2, we cited Western Security Bank v. Superior Court,
933 P.2d 507, 514 (Cal. 1993), for the general principle that when the
Legislature enacts a clarifying amendment, the true meaning of the earlier
version of the statute remains the same.  This principle is generally
true, but, as explained above, not when the Legislature seeks to overturn a
final judicial decision of a court of last resort.  See McClung, 99
P.3d at 1022 (distinguishing Western Security Bank on basis that “the
only judicial action that had interpreted the statute before the Legislature
amended it was a Court of Appeal decision that never became final”).

¶ 20.         We
also held in Kenvin that the Legislature’s amendment of a statute in
direct response to our recent decision indicated that it intended the new law
to be a clarification of what the law always was rather than a change in the
law.  2011 VT 123, ¶ 25.  But the one
Vermont case we cited in support of that holding involved a legislative
amendment enacted in response to pending litigation rather than a prior
judicial decision, see In re Shantee Point, Inc., 174 Vt. 248, 258, 811
A.2d 1243, 1251 (2002), and the two out-of-state cases that we cited involved
legislative enactments in response to decisions by courts that were not courts
of last resort in the state.  See In re Oswalt, 444 F.3d 524,
528-29 (6th Cir. 2006) (determining that legislative enactment responding to
decision by Sixth Circuit Court of Appeals interpreting Michigan law was
clarification of law entitled to retroactive effect); Oxford Tire Supply,
Inc. v. Comm’r of Revenue Servs., 755 A.2d 850, 856 (Conn. 2000)
(concluding that legislative enactment in direct response to trial court
decision was clarification entitled to retroactive effect).

¶ 21.         Accordingly,
for the reasons stated above, we overrule Kenvin to the extent it
suggested that a statutory amendment rejecting this Court’s prior
interpretation of a statute should be applied retroactively as a clarification
of the law.  Even if Act 4 was enacted in response to decisions by this
Court, that fact would not indicate any legislative intent to apply the act
retroactively.  Nor do we find any other indication that the Legislature
intended for Act 4 to apply retrospectively.  See Northwood AMC Corp.
v. Am. Motors Corp., 139 Vt. 145, 148, 423 A.2d 846, 848 (1980) (“We very
early held that absent the ‘most clear and unequivocal language’ a statute
affecting legally existing rights should not be construed retrospectively.” (quoting Briggs v. Hubbard, 19 Vt. 86, 90-91 (1846))).

¶ 22.         Given
our conclusion that the language and legislative history of Act 4 unequivocally
demonstrate that the act amended rather than clarified prior law, we find no
significance in the fact that a summary statement of the Office of Legislative
Counsel used the work “clarify” to describe what the Act did.[3]  In any event, to the extent that
defendant is arguing that legislative counsel’s summary is equivalent to the
Legislature declaring the new law to be a clarification rather than an
amendment, the mere labeling of a new law as a clarification of existing law
does not make it so.  See In re D.K., 2012 VT 23, ¶¶ 7-9, 191 Vt.
328, 47 A.3d 347 (stating that new law plainly changed prior law and could not
be considered mere clarification of law, notwithstanding fact that Legislature
“took pains” to describe it as such); McClung, 99 P.3d at 1020 (“A
declaration that a statutory amendment merely clarified the law cannot be given
an obviously absurd effect, and the court cannot accept the Legislative
statement that an unmistakable change in the statute is nothing more than a
clarification and restatement of its original terms.” (quotation
omitted)).

¶ 23.         We
are left, then, with the fact that Act 4, by its own terms, became effective
immediately upon passage.  This fact alone does not indicate that the
Legislature intended the act to apply retrospectively.  See Kenvin,
2011 VT 123, ¶ 24 (“We presume that the Legislature intended to change the
meaning of a statute when it amends it, but we will recognize clarification of
the law where the circumstances clearly indicate it was intended.”).

¶ 24.         In
light of our conclusion that Act 4 did not merely clarify existing law and does
not apply retroactively, we must examine the law that was in place at the time
defendant was sentenced in January 2013 to determine if he is entitled to
credit for time served beyond what was afforded by the Department of
Corrections and the superior court.  At the time of his sentencing,
defendant was entitled under § 7031(b) to credit “for any days spent in custody
in connection with the offense for which sentence was imposed.” 
Construing that version of § 7031(b) in Blondin, 164 Vt. at 61, 665
A.2d at 592, we held that “when a defendant is incarcerated based on conduct
that leads to revocation of probation or parole and to conviction on new
charges, the time spent in jail before the second sentence is imposed should be
credited toward only the first sentence if the second sentence is imposed
consecutively, but toward both sentences if the second sentence is imposed
concurrently.”  This holding has been reaffirmed by this Court on several
occasions, including recently, see State v. LeClair, 2013 VT 113, ¶ 9; Martel
v. Lanman, 171 Vt. 547, 548, 759 A.2d 65, 66 (2000) (mem.), and “has been
uniformly recognized by both federal and state courts in jurisdictions having
statutory language similar to 13 V.S.A. § 7031(b),” Sommer, 2011 VT
59, ¶ 2, 190 Vt. 236, 27 A.3d 1059.

¶ 25.         In
this case, defendant’s second set of sentences was imposed consecutively to his
initial sentence, which he was still serving on furlough when he was charged
with the new offenses.  Defendant acknowledges this fact and our holding
in Blondin, but insists that Blondin does not govern in this
instance because his furlough status was never revoked and he was detained on
the second set of charges solely based on his failure to make bail on those
charges.  Relying on Ali v. District of Columbia, 612 A.2d 228, 230
(D.C. 1992), which was cited in Blondin, 164 Vt. at 60-61, 665 A.2d at
591, defendant argues that he must be credited against the second set of
charges for the time he spent in jail following his arrest on those charges in
light of the fact that his furlough on the initial conviction was not revoked
and thus he was held solely for lack of bail on those charges.

¶ 26.         We
find this argument unavailing.  In Blondin, we cited Ali as
an example of a case that took the “unacceptable” position of denying double
credit based on the timing of probation or parole revocation proceedings, even
when convictions on new charges were imposed concurrently to the initial
sentence.  164 Vt. at 60-61, 665 A.2d at 591-92. 
Here, irrespective of when, or if, his furlough was
revoked based on the new charges, the fact remains that defendant was still
serving his sentence, albeit in the community, when he was arrested and
incarcerated on the new charges.  As we stated recently in LeClair,
2013 VT 114, ¶¶ 9-10, “the crucial factor in Blondin is whether the
earlier and later sentences are to be served concurrently or consecutively,”
and thus, “our holding in Blondin turns more on the concurrence of the
sentences than the nature of probation or parole”—or furlough for that matter. 
Under the rule in Blondin, given that defendant’s convictions on the
second set of charges were imposed consecutively to his initial sentence, he
was not entitled to double credit for the time he was incarcerated following
his arrest on the second set of charges, notwithstanding that his furlough
status on the initial conviction was not revoked.

Affirmed.

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
Defendant also relies upon 13 V.S.A. § 7032(c)(2),
which was amended along with § 7031(b) by Act 4, see 2013, No. 4, § 2, and
which also neither defines an offense nor prescribes a punishment.  One of
defendant’s arguments on appeal is that his aggregate minimum and maximum
sentences should have been two and one-half years to thirty-three years,
instead of the aggregate two-to-thirty-three-year sentence indicated by the
court in its ruling on his motion for sentence reduction.  In light of our
decision as set forth below, we need not address this argument.





[2]
Sections 1 and 2 of Act 4 reveal significant changes to the statutes at issue
in this case:

Sec.
1.  13 V.S.A. § 7031 is amended to read:

 

. . . .

 

(b) [T]he sentence
of imprisonment of any person convicted of an offense shall commence to run
from the date on which the person is received at the correctional facility for
service of the sentence.  The court shall give the person credit toward
service of his or her sentence for any days spent in custody in connection
with the offense for which sentence was imposed as follows:

 

(1)   The period of
credit for concurrent and consecutive sentences shall include all days served
from the date of arraignment or the date of the earliest detention for the
offense, whichever occurs first, and end on the date of the sentencing. 
Only a single credit shall be awarded in cases of consecutive sentences, and no
credit for one period of time shall be applied to a later period.

 

(2)   In sentencing a
violation of probation, the court shall give the person credit for any days
spent in custody from the time the violation is filed or the person is detained
on the violation, whichever occurs first, until the violation is
sentenced.  In a case in which probation is revoked and the person is
ordered to serve the underlying sentence, the person shall receive credit for
all time previously served in connection with the offense.

 

. . . .

 

Sec.
2.  13 V.S.A. § 7032(c) is amended to read:

 

(c) In all cases
where multiple or additional sentences have been or are imposed, the term or
terms of imprisonment under those sentences shall be determined in accordance
with the following definitions:

 

. . . .

 

(2)   When terms run
consecutively, the minimum terms are added to arrive at an aggregate minimum to
be served equal to the sum of all minimum terms and the maximum terms are added
to arrive at an aggregate maximum equal to the sum of all maximum terms.  A
person shall serve no more time on consecutive minimum sentences than the sum
of the minimum terms, regardless of whether the sentences are imposed on the
same or different dates.  If a person has served a minimum term and
subsequently incurs another criminal charge, the time the person spends in
custody awaiting disposition of the new charge shall count toward the minimum
term of the new sentence, if one is imposed.  This subdivision shall not
require the Department of Corrections to release a person from incarceration to
community supervision at the person’s minimum term.

 

2013, Act. 4, §§ 1-2





[3] 
Legislative counsel’s summary of the effect of Act 4, in relevant part, stated
as follows:

·        
Clarify how credit for time spent in prison prior to sentencing is applied
to a sentence (starts from the time you are detained)[.]

 

·        
Clarify that if a person is sentenced to consecutive sentences, the new
minimum for time to serve is the sum of the minimum terms.  If someone
spends additional time on detention awaiting disposition of another charge, it
is credited to the new minimum.

 

Summary of
the Acts and Resolves of the 2013 Vermont General Assembly, No. 4, available at
http://www.leg.state.vt.us/reports/2013ExternalReports/292522.pdf. 
There is no indication that the use of the word clarify in the legislative
summary was intended as a term of art to distinguish legislation that clarifies
as opposed to amends, or in this case to suggest that Act 4 merely clarified
and did not amend the substance of existing law.  In any case, as noted,
the language of the new law, as well as the explanation by the legislatively
appointed committee that proposed an earlier version of the new law,
demonstrate otherwise.